*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1678**

State of Minnesota,
Respondent,

vs.

Eric Jerome Johnson,
Appellant.

**Filed August 11, 2014
Affirmed
Reilly, Judge**

Scott County District Court
File No. 70-CR-12-10427

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Reilly, Judge; and

Stoneburner, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges two convictions of first-degree criminal sexual conduct arguing that the district court abused its discretion by allowing the state to introduce evidence of a prior conviction for criminal sexual conduct and improperly convicted him of two counts of first-degree criminal sexual conduct based on the same criminal act against the same complainant. We affirm.

**FACTS**

On March 8, 2012, appellant's sister T.J. traveled from Hammond, Indiana, to Minnesota for a four-day family visit. T.J. was accompanied by her three minor daughters, including 15-year-old T.R., born May 5, 1996. T.J. and her daughters stayed in appellant's house with appellant and his wife and daughter. On March 10, several family members, including appellant, T.R., and her mother and sisters, went to the Mall of America from approximately 10:00 a.m. to 8:30 or 9:00 p.m. The family returned to appellant's house. Later that evening, appellant and his wife left the house to go to a club with friends. T.R.'s mother stayed at the house with the children. T.R. went upstairs to appellant's daughter's bedroom to watch television and fell asleep at approximately 1:00 or 2:00 a.m. T.R.'s mother and sisters fell asleep downstairs.

At some point during the night, T.R. woke up and thought that someone had been touching her breasts. Her clothes were still on. T.R. thought she could see someone in the room, but she could not identify who it was. T.R. believed she saw a shadow by the closet. T.R. could not distinguish whether someone was standing in the room with her or

not and fell back to sleep. T.R. next remembered feeling as though someone was lying on top of her. T.R. was partially undressed with both her right pant leg and her right underpants leg off. She felt a "shove" and felt someone put his penis into her vagina. T.R. woke up completely and jumped from the pain. She felt someone jump off of her and run out of the room. There was a light on in the hallway and T.R. recognized the individual as her uncle, the appellant. T.R. pulled her clothes on and ran downstairs to be close to her mother and sisters. She crawled in bed next to her sister and tried to go to sleep.

The next morning, T.R. took a shower and reported that she was mad, sad, and did not have an appetite. She went to the mall with her sisters to meet up with her aunts and cousins. Appellant drove T.R. and her sisters to the mall. T.R.'s mother stayed at the house to finish packing and cleaning before their departure that afternoon. Once at the mall, T.R. went into a nearby store to call her mother. T.R. told her mother that appellant had sex with her while she was asleep. Both T.R. and her mother began crying. T.R.'s mother asked her where she was and instructed her to stay in the store. T.R.'s mother got into her car to drive to the mall. En route to the mall, T.R.'s mother called her sister—one of T.R.'s aunts—and asked her to find T.R. T.R.'s aunt found T.R. in the store and led her out of the mall and into the parking lot outside. T.R.'s mother arrived at the mall and found T.R. waiting for her outside.

T.R. got into her mother's car and they called the police to report the crime. At approximately 2:00 p.m., T.R.'s mother spoke with a City of Prior Lake police officer and reported that her daughter had been molested. The officer instructed T.R. and her

3

mother to drive to St. Francis Regional Medical Center for a medical examination. The officer met T.R. and her mother at the hospital. At approximately 3:00 p.m., T.R. met with a Sexual Assault Nurse Examiner for a sexual assault examination and a forensic physical examination. T.R. provided a urine sample and underwent a speculum exam, which included swabs from her cervix, perineum, and vagina. T.R. and her mother and sisters returned to Hammond, Indiana, immediately after leaving the hospital.

The samples collected from T.R.'s examination were sent to the Minnesota BCA for testing. Semen was identified on the cervical, perineal, and vaginal swabs. On April 28, the BCA performed DNA tests on the swabs and determined that appellant could not be excluded from the analysis and 99.9999998% of the general population could be excluded. The state charged appellant with one count of first-degree criminal sexual conduct.

As part of their investigation into the case, detectives ran a search of appellant's criminal history and discovered previous criminal convictions, including a criminal sexual conduct conviction from 2002. Prior to trial, the state moved to introduce *Spreigl* evidence of appellant's prior criminal sexual conduct conviction to show intent, knowledge, lack of mistake, and modus operandi. Specifically, the state proposed to offer evidence of appellant's 2002 conviction of second-degree criminal sexual conduct arising out of sexual contact between appellant and his then-girlfriend's 12-year-old daughter. In that case, appellant, who was living in his girlfriend's household, habitually entered the girl's bedroom at night to touch her buttocks and vaginal area. Appellant pleaded guilty to that offense and served a 39-month executed sentence. Appellant

4

objected to the admission of this evidence. On March 27, the district court issued an order partially granting the state's request. The district court determined that the 2002 conviction involved a victim living in the same household as the appellant at the time of the offense, and that the abuse took place at night when the victim was in her bed and sleeping. The district court concluded that:

> These facts meet the materiality and relevance requirements of *Spreigl*. The location of the offenses, the status of the victim, and the circumstances of the abuse are remarkably similar. Moreover, in both cases, the victim was a child that was known to the Defendant and was someone the child knew as a household member.

At the beginning of trial, the state moved to amend the complaint to add a second count of first-degree criminal sexual conduct, and the motion was granted from the bench. The jurors were instructed that the complaint contained two allegations: (1) criminal sexual conduct in the first degree, alleging that appellant engaged in sexual penetration with another person, that appellant had a significant relationship with the complainant, and that the complainant was under 16 years of age at the time; and (2) criminal sexual conduct in the first degree, alleging that appellant engaged in sexual penetration with another person when that person was between 13 and 16 years of age, and that appellant was in a position of authority over the victim.

Appellant testified on his own behalf during trial. Appellant testified that in the middle of the night, he entered the bedroom where T.R. was sleeping to turn off the television. Appellant stated that he saw T.R. lying on the bed masturbating and began masturbating himself. Appellant stated that he ejaculated and then returned to his

5

bedroom. During cross-examination, appellant testified that he is attracted to developed young girls between the ages of 12 and 15. Appellant acknowledged that he has a problem and testified that he and his wife have taken precautions to ensure that people in their house are safe. By way of example, appellant stated that he does not bathe or change his daughters or let young girls sleep over at the house. Appellant's wife also testified that appellant is attracted to physically developed young girls and that he sought sex-offender treatment and took classes as a means of overcoming these issues. Although appellant objected to his wife testifying based on spousal privilege, he did not object to the content of her testimony.

Before the state presented *Spreigl* testimony and by agreement of the parties, the district court gave the standard cautionary instruction to the jury regarding testimony of other crimes. The *Spreigl* witness testified that appellant dated her mother from 1999 to 2001. Between 2000 and 2001, appellant lived with the witness and her mother. The witness reported that, beginning when she was 11 years old, there were over 20 sexual incidents between appellant and the witness. During one incident, appellant walked into the witness's bedroom while everybody was asleep and began groping her. When she opened her eyes, appellant was hiding against the closet door, "camouflag[ing] himself into the night." The witness described this activity as "ongoing behavior," during which appellant visited her bedroom and assaulted her during the night while everyone else was asleep.

6

The jury found appellant guilty of both charges. The district court formally adjudicated and sentenced appellant on count one only. Appellant subsequently appealed.

## D E C I S I O N

### I.

Appellant raises evidentiary errors regarding the admission of *Spreigl* evidence and testimony that he was sexually attracted to physically mature young girls. We conclude that the district court did not abuse its discretion in admitting this evidence.

Generally, evidence of past crimes or bad acts, known as *Spreigl* evidence, is not admissible to prove the character of a person or that the person acted in conformity with that character in committing an offense. Minn. R. Evid. 404(b); *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998). But *Spreigl* evidence may be admissible to demonstrate factors such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). *Spreigl* evidence may also be admitted to show whether the conduct on which the charge was based actually occurred or was "a fabrication or a mistake in perception by the victim." *State v. Wermerskirchen*, 497 N.W.2d 235, 241-42 (Minn. 1993). Admission of *Spreigl* evidence rests within the sound discretion of the trial court and is reviewed under an abuse of discretion standard. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006). An "appellant challenging the admission of *Spreigl* evidence bears the burden of showing the error and any resulting prejudice." *State v. Clark*, 738 N.W.2d 316, 345 (Minn. 2007).

Before admitting *Spreigl* evidence, a court must perform a five-step analysis:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Ness*, 707 N.W.2d at 685-86.

The first three elements are uncontested. The state gave proper notice of its intent to admit *Spreigl* evidence, articulated what the evidence was offered to prove, and demonstrated by clear and convincing evidence that appellant participated in the prior act. *See, e.g.*, *State v. Blom*, 682 N.W.2d 578, 601 (Minn. 2004) (holding that evidence of defendant's conviction is clear and convincing evidence of prior incident).

With respect to the fourth element, the record shows that the district court fully and thoughtfully considered the parties' arguments and determined that the facts giving rise to the 2002 conviction "[met] the materiality and relevance requirements of *Spreigl*." In determining the relevance of *Spreigl* evidence to the charged crime, a court must consider its proximity to the charged crime in time, place, or modus operandi. *Kennedy*, 585 N.W.2d at 391 (holding that *Spreigl* evidence need not be identical to the charged offense, but must be "sufficiently or substantially similar"). Here, the district court found that the 2002 incident was sufficiently similar to the charged offense in several respects. In both instances, the district court found that the victims were children known to appellant as a household member, and that the sexual assaults occurred in the child's bedroom while the child was sleeping alone in her bed. The district court acknowledged that the offenses are separated by approximately ten years. Minnesota recognizes that

bad acts that are remote in time may still be relevant if the defendant was incarcerated during that time. *Ness*, 707 N.W.2d at 689. For incarceration, a court may subtract the length of incarceration from the time that has passed since the charged offense. *Clark*, 738 N.W.2d at 346. Here, the district court noted that following appellant's conviction in 2002 he served an executed sentence and a supervised release period of approximately eight years.

Appellant concedes that the facts underlying the 2002 offense share some similarities with the present case but argues that the 2002 offense is not similar enough because it did not involve sexual penetration. However, "[a]bsolute similarity between the charged offense and the *Spreigl* incident is not required to establish relevancy." *State v. Berry*, 484 N.W.2d 14, 17 (Minn. 1992). The district court plainly articulated why it determined that the *Spreigl* conduct is "remarkably similar" to the charged offense. The district court did not abuse its discretion in finding that the 2002 incident was relevant and material to the charged offenses.

Additionally, with respect to the fifth factor, the district court did not abuse its discretion in determining that the probative value of the evidence outweighed its prejudicial effect. In weighing these considerations, "the court must consider how crucial the *Spreigl* evidence is to the state's case." *Pierson v. State*, 637 N.W.2d 571, 581 (Minn. 2002). The district court may also determine that *Spreigl* evidence is more probative than prejudicial if the testimony is admitted not to "arouse the jury's passion, but rather for the purpose of illuminating the relationship" between a defendant and the victim, and "placing the incident . . . in proper context." *Kennedy*, 585 N.W.2d at 392

("Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value."). Further, before any *Spreigl* evidence was presented in this case, the district court gave the jurors cautionary instructions regarding the proper use of the evidence. The district court again gave the cautionary instruction before the case was submitted to the jury for deliberation. These cautionary instructions "lessened the probability of undue weight being given by the jury to the evidence." *Id.* The district court did not abuse its discretion in finding that the 2002 incident was relevant and material to the present case.

Appellant further argues that the district court wrongfully admitted evidence during trial that had a cumulative, prejudicial effect and deprived appellant of a fair trial. Specifically, appellant cites to admission of his wife's testimony, the *Spreigl* evidence arising from his 2002 conviction, and the testimony elicited from appellant on cross-examination. "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). On appeal, the appellant bears the burden of establishing that the district court abused its discretion and that appellant was prejudiced. *Id.*

Appellant challenges the admission of his wife's testimony regarding his attraction to physically developed young girls, his sex-offender treatment classes, and the steps appellant and his wife took to keep children safe in their house. Before trial, appellant objected to his wife's testimony based on spousal privilege. The district court ruled that appellant's wife's testimony was admissible for the purpose of describing the abuse in the present case as well as the 2002 *Spreigl* incident under Minnesota Statute section

626.556, which provides an exception to marital privilege in cases of child abuse. Minn. Stat. § 626.556, subd. 8 (2010) ("No evidence relating to the neglect or abuse of a child or to any prior incidents of neglect or abuse involving any of the same persons accused of neglect or abuse shall be excluded in any proceeding arising out of the alleged neglect or physical or sexual abuse on the grounds of privilege[.]"). Appellant did not object to the content of his wife's testimony at trial. "Failure to object to the admission of evidence generally constitutes waiver of the right to appeal on that basis." *State v. Vick*, 632 N.W.2d 676, 684-85 (Minn. 2001). Since appellant failed to object to this evidence at trial this issue was not preserved for appeal and generally this court would apply a plain-error standard of review.

Here, appellant is not entitled to relief under the plain-error doctrine. The plain-error doctrine holds that "a party cannot assert on appeal an error that he invited or that could have been prevented at the district court." *State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012). So although appellant did not object to testimony regarding his attraction to physically mature young girls and his sex-offender treatments at trial, "we have the discretion to consider this issue on appeal if it is plain error affecting substantial rights." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). The plain-error test permits this court to review unobjected-to errors if: "(1) there is error, (2) the error is plain, and (3) the error affects substantial rights." *Carridine*, 812 N.W.2d at 142. While not finding that the first two prongs have been satisfied we focus our analysis on the third prong. With respect to the third prong, appellant must demonstrate that the error "was prejudicial

and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. The defendant bears a "heavy burden" of persuasion on this third prong. *Id.*

We conclude that the plain-error standard is not met here because appellant has not shown that his substantial rights were affected. Here, appellant himself relied on testimony during trial that he was physically attracted to sexually developed young girls, that he sought treatment as a recovering sex offender, and that he took a number of precautions to protect young girls in his home. We do not credit appellant's argument that similar evidence introduced through his wife's testimony affected his substantial rights. Upon review, we conclude that appellant's wife's testimony did not have a significant effect on the verdict, and thus it was not a plain error entitling appellant to a new trial. *Id*. at 742.

Appellant further contends that the district court wrongly permitted the state during cross-examination to question appellant extensively about his sexual attraction to young girls and the facts underlying his 2002 conviction. Appellant's argument is unpersuasive. As part of his trial strategy, appellant took the stand in his own defense and testified about his sex-offender treatment classes and the precautions appellant and his wife took in their own house. In essence, appellant is objecting to trial strategy, and "[t]his court cannot reverse on grounds of inappropriate trial strategy." *State v. Spurgin*, 358 N.W.2d 648, 651 (Minn. 1984).

In rare cases, the cumulative effect of trial errors can deprive a defendant of his constitutional right to a fair trial. *State v. Davis*, 820 N.W.2d 525, 538 (Minn. 2012). But we have concluded, in this case, there were no errors. The district court acted within

12

its discretion in admitting the *Spreigl* evidence, appellant's wife's testimony, and appellant's testimony on cross-examination. Thus, the cumulative-effect argument is not relevant to this case.

## II.

Appellant raises two additional arguments in his supplemental pro se brief. First, appellant argues that the state sought to have a district court judge assigned to the case at the pretrial stage and that appellant did not have the opportunity to challenge this judicial assignment. Second, appellant objects to the district court judge's statement to the prospective jury panel during voir dire that "I think it's safe to say that no one is in favor of child abuse." Appellant contends that this comment was prejudicial and entitles him to a new trial. Appellant fails to cite to any relevant facts or legal authority to support these arguments, and they are deemed waived. *See State v. Manley*, 664 N.W.2d 275, 286 (Minn. 2003) (waiving arguments raised in supplemental pro se brief that were "unsupported by any facts in the record" and contained "no citation to any relevant legal authority").

## III.

Appellant argues that he was improperly convicted of two counts of first-degree criminal sexual conduct based on the same criminal act against the same complainant. *See* Minn. Stat. § 609.04 (2010). ("Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both.").

"[T]he proper procedure to be followed by the trial court when the defendant is convicted on more than one charge for the same act is for the court to adjudicate formally

13

and impose sentence on one count only." *State v. French*, 400 N.W.2d 111, 114 (Minn. App. 1987) (quoting *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984)), *review denied* (Minn. Mar. 25, 1987). Here, the jury found appellant guilty of both charges. During sentencing, the district court formally adjudicated appellant on count one, criminal sexual conduct in the first degree, and sentenced him on that count alone. The remaining offense was merged for sentencing purposes and an additional sentence was not imposed.

Appellant argues that the order and warrant of commitment is incorrect because it states that appellant was convicted on both counts. However, the Minnesota Supreme Court has "long recognized that the 'conviction' prohibited by this statute is not a guilty verdict, but is rather a formal adjudication of guilt." *Pierson v. State*, 715 N.W.2d 923, 925 (Minn. 2006). "In other words, a conviction occurs only after the district court judge accepts, records, and adjudicates the jury's guilty verdict." *Id*. Whether a defendant was "formally adjudicated" guilty of an offense must be determined by reviewing the official judgment of conviction. *State v. Plan*, 316 N.W.2d 727, 728-29 (Minn. 1982). Here, the factual record supports the jury's convictions, *State v. Ashland*, 287 N.W.2d 649, 650 (Minn. 1979), and the order and warrant of commitment accurately reflects that the jury convicted appellant on both counts one and two.

Our review of the record further reveals that appellant was formally adjudicated on only one of the jury's convictions. The jury's conviction on the second charge was never adjudicated as defined by Minnesota caselaw and, as such, it would be improper to vacate an unadjudicated-conviction. *French*, 400 N.W.2d at 114-15; *see also LaTourelle*, 343

14

N.W.2d at 284 ("If the adjudicated conviction is later vacated for a reason not relevant to the remaining unadjudicated conviction(s), one of the remaining unadjudicated convictions can then be formally adjudicated and sentence imposed[.]"). Accordingly, appellant's request to remand to the district court to alter the order and warrant for commitment is denied.

**Affirmed.**