STATE of Minnesota, petitioner,
Appellant,

v.

Charles Edward KENNEDY, Respondent.

No. CX–96–2532.

Supreme Court of Minnesota.

Nov. 5, 1998.

## ORDER

Hubert H. Humphrey, III, Atty. Gen., Michael O. Freeman, Hennepin County Atty., Linda M. Freyer, Asst. County Atty., Minneapolis, for appellant.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

Charles Edward Kennedy was convicted of attempted criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(b) (1994). The court of appeals reversed the conviction because, in its opinion, the trial court committed prejudicial error by

admitting evidence that Kennedy sexually assaulted the victim six months after the charged incident. *State v. Kennedy*, 572 N.W.2d 58, 63–64 (Minn.App.1997). We reverse the court of appeals and reinstate the judgment of the trial court.

The conviction stems from an allegation that on April 29, 1995, Kennedy, then 29 years of age, had sexual intercourse with N.G., the 13–year–old daughter of his girlfriend. On that date, at approximately 3:30 a.m., N.G. was home in her living room babysitting her two younger brothers when Kennedy, who frequently stayed with N.G.'s mother, arrived at the home. After learning that N.G.'s mother was out, Kennedy attempted to touch N.G. on her breast and thighs. When he heard N.G.'s mother putting the keys in the front door, Kennedy stopped trying to fondle N.G. and, shortly thereafter, joined N.G.'s mother in the bedroom.

Later, Kennedy returned to the living room and asked N.G. to sleep naked on the couch. N.G. refused, taking her pillow, blanket, and a sleeping younger brother to her room and closing the door. Kennedy then entered N.G.'s room, took the sleeping brother to another room, and returned. He told N.G. to get down on the floor and, without removing her pajama shorts, tried to force his penis into her vagina. He ejaculated on her pajama shorts and blanket. At trial, N.G.'s mother testified that Kennedy left her bedroom for extended periods of time that evening complaining that he was sick and had to use the bathroom.

After Kennedy left N.G.'s room, she took off the pajama shorts and placed them in her dirty clothes pile. The pajama shorts remained there for several days until they were given to a neighbor who suggested they might be useful to the police. Six days after the incident, a law enforcement officer retrieved the shorts from the neighbor. DNA testing indicated that it was Kennedy's semen on the shorts.[1] At trial, Kennedy attempted to explain the presence of his semen on the shorts by stating that everyone living in the home wore each other's clothing.

The afternoon following the incident, N.G. told her best friend what happened. N.G.'s best friend then told N.G.'s father, who then reported the incident to N.G.'s mother. When N.G.'s mother confronted N.G., N.G. told her mother what had happened. N.G.'s mother subsequently confronted Kennedy, who denied the incident. The following day, Kennedy moved his things out of the house. Kennedy returned a few days later and admitted to N.G.'s mother that he had fondled N.G. but that he was drunk at the time, did not know what he was doing, and that he was sorry. At trial, Kennedy admitted telling N.G.'s mother he touched N.G., but claimed the only reason he made the admission was because N.G.'s mother asked him so many times that he finally just agreed.

On May 19, 1995, N.G. recanted her story, claiming that nothing had happened between herself and Kennedy and that she said what she did because she was under pressure at home and wanted Kennedy out of the house. After spending the summer in Indiana, N.G. was again questioned about the incident and this time stated that it had in fact occurred, explaining that "it wasn't right for me to suffer from what he did."

Prior to trial, the state gave Kennedy notice that it intended to introduce evidence of a later incident in which N.G. alleged that Kennedy again sexually assaulted her. Before the state concluded its case-in-chief, the trial court held a hearing and decided that the evidence should be admitted. N.G. then testified that in November 1995, Kennedy, who was once again seeing N.G.'s mother, was spending the night at the home. While N.G. was sleeping, Kennedy entered her room and began rubbing her thighs. Kennedy allegedly offered her money for sex and attempted to penetrate her digitally. N.G. told her mother about this incident the next day, and N.G.'s mother immediately confronted Kennedy and told him that he could not come into the home again.

The jury found Kennedy guilty of attempted criminal sexual conduct in the first degree. The court of appeals reversed the

---

**1.** The state's forensic scientist testified that "[t]he probability [that the semen did not belong to Kennedy] is expressed as one in one hundred seventy-one million."

conviction and granted a new trial, holding that the trial court abused its discretion by admitting evidence of the November incident. We now review the trial court's evidentiary ruling.

■■■ Absent a clear abuse of discretion, evidentiary rulings generally rest within the trial court's discretion. *See State v. Glaze,* 452 N.W.2d 655, 660 (Minn.1990). A defendant who claims the trial court erred in admitting evidence bears the burden of showing the error and any resulting prejudice. *See State v. Steinbuch,* 514 N.W.2d 793, 799 (Minn.1994).

As a general rule, evidence of other crimes or misconduct is not admissible to prove the defendant's character for the purpose of showing that he or she acted in conformity with that character. *See* Minn. R. Evid. 404(b); *see also State v. DeWald,* 464 N.W.2d 500, 502 (Minn.1991). Such evidence, however, may be admitted for the limited purpose of showing motive, intent, absence of mistake or accident, identity, or a common scheme or plan. *See* Minn. R. Evid. 404(b).

■■■ Other crimes evidence, often referred to in Minnesota as *Spreigl* evidence after this court's decision in *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965), shall not be admitted in a criminal prosecution unless: (1) notice is given that the state intends to use the evidence; (2) the state clearly indicates what the evidence is being offered to prove; (3) the evidence is clear and convincing that the defendant participated in the other offense; (4) the *Spreigl* evidence is relevant and material to the state's case; and (5) the probative value of the *Spreigl* evidence is not outweighed by its potential for unfair prejudice. *See State v. Bolte,* 530 N.W.2d 191, 196–97 (Minn.1995) (detailing procedural requirements and safeguards governing other-crime evidence); *see also State v. Landin,* 472 N.W.2d 854, 859 (Minn.1991); *DeWald,* 464 N.W.2d at 503. When it is unclear whether *Spreigl* evidence is admissible, the benefit of the doubt should be given to the defendant and the evidence should be excluded. *See State v. Johnson,* 568 N.W.2d 426, 433 (Minn.1997).

It is clear that the state gave Kennedy adequate notice that it intended to use the *Spreigl* evidence at trial for the purpose of proving a common scheme or plan and to refute allegations of fabrication. This court must therefore determine whether: (1) the evidence is clear and convincing that Kennedy sexually assaulted N.G.; (2) the evidence is relevant and material to the state's case; and (3) the probative value of the evidence outweighs its prejudicial effect.

### I. Clear and Convincing

■■■ Whether evidence of a subsequent act is clear and convincing "requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978). The clear and convincing standard is met when the truth of the facts sought to be admitted is "highly probable." *Id.*

■■■ The court of appeals held that the clear and convincing standard was not met in this case because N.G.'s testimony was uncorroborated. According to the court of appeals, the uncorroborated testimony of a victim cannot be clear and convincing because "the victim may have fabricated the second complaint against the defendant to bolster her own testimony about the charged offense." *Kennedy,* 572 N.W.2d at 61. We see no reason why a victim's *Spreigl* testimony must be corroborated in order to meet the clear and convincing standard. *See State v. Volstad,* 287 N.W.2d 660 (Minn.1980). In fact, this court has on numerous occasions admitted *Spreigl* evidence supported only by the testimony of the victim in the *Spreigl* offense. *See e.g., State v. Wermerskirchen,* 497 N.W.2d 235 (Minn.1993); *State v. De-Baere,* 356 N.W.2d 301 (Minn.1984).

The rationale for admitting such uncorroborated evidence is clear: if a sexual assault victim's testimony alone is sufficient to establish proof beyond a reasonable doubt—a much higher standard—it should be enough to satisfy the clear and convincing requirement. *See* Minn.Stat. § 609.347, subd. 1 (1996) (providing that "[i]n a prosecution under sections 609.342 to 609.346, the testimony of a victim need not be corroborated."); *see also State v. Myers,* 359 N.W.2d 604, 608 (Minn.1984); *State v. Kinyon,* 268 N.W.2d

78, 78 (Minn.1978). Therefore, we see no reason why corroboration of the *Spreigl* victim's testimony is necessary as a matter of law to meet the clear and convincing standard.

■ The court of appeals also held that *Spreigl* evidence of an incident occurring after the charged offense should be scrutinized even more strictly than similar evidence of an incident occurring prior to the charged offense. *See Kennedy*, 572 N.W.2d at 64 (citing *State v. Elvin*, 481 N.W.2d 571, 575 (Minn.App.1992) *pet. for rev. denied* (Minn. Apr. 29, 1992)). We disagree. This court made it plain in *State v. Lynard*, 294 N.W.2d 322 (Minn.1980), that the "principles governing [*Spreigl*] evidence are the same whether [the other crime, wrong or act] occurs before or after the offense charged." *Id.* at 323 (citation omitted). "This means that evidence of other crimes, including subsequent ones, may be admitted for a proper purpose * * *." *Id.* at 323 (citations omitted). The procedural safeguards are designed to ensure that all *Spreigl* evidence, whether concerning a prior or subsequent incident, is subjected to an exacting review. We therefore see no reason why evidence of a subsequent act should be scrutinized more closely than evidence of a prior act.

■ There is also no merit to Kennedy's argument that the clear and convincing standard was not met because the trial court did not hear N.G.'s actual testimony concerning the *Spreigl* incident before deeming it clear and convincing. As we stated in *State v. Lindahl*, 309 N.W.2d 763 (Minn.1981):

> We are not prepared to establish any requirement that the state call the *Spreigl* witnesses to testify at the hearing to determine the admissibility of the *Spreigl* evidence. The trial court has broad discretion in determining whether or not to require this in a particular case and defendant is always free to challenge the exercise of that discretion on post-trial appeal.

*Id.* at 766; *see also State v. Kasper*, 409 N.W.2d 846, 847 (Minn.1987) (stating that "the trial court and appellate court's are always free to grant relief, when appropriate, if the evidence adduced was not what the prosecutor led the trial court to expect.").

Here, the court allowed the state to submit an offer of proof in the form of a memorandum in support of admitting the other-crime evidence. This memorandum detailed the facts to which N.G. would testify. The trial court then conducted a hearing in which each side argued the admissibility of the evidence. While the court did not require that N.G. testify at this hearing, the circumstance in this case made that unnecessary. The court already had the opportunity to judge N.G.'s credibility during her testimony regarding the charged offense, had an offer of proof detailing the facts to which N.G. would testify, and had in its possession N.G.'s videotaped statements to social workers regarding the incident. The trial court, considering all of these factors, did not abuse its discretion in relying upon the state's offer of proof rather than requiring N.G.'s testimony.

## II. Relevance and Materiality

■ In determining the relevance and materiality of *Spreigl* evidence, "the trial court should consider the issues in the case, the reasons and need for the evidence, and whether there is a sufficiently close relationship between the charged offense and the *Spreigl* offense in time, place or modus operandi." *DeBaere*, 356 N.W.2d at 305; *see also Wermerskirchen*, 497 N.W.2d at 240 (citing *State v. Filippi*, 335 N.W.2d 739, 743 (Minn. 1983)). The closer the relationship between the events, "the greater the relevance or probative value of the evidence and the lesser the likelihood the evidence will be used for an improper purpose." *Bolte*, 530 N.W.2d at 198 (citation omitted). This court has "been flexible in applying this 'test' on appeal, upholding admission notwithstanding a lack of closeness in time or place if the relevance of the evidence was otherwise clear." *Id.* (citing *State v. Matteson*, 287 N.W.2d 408 (Minn. 1979); *State v. Bolts*, 288 N.W.2d 718 (Minn. 1980); *State v. Bellcourt*, 312 Minn. 263, 251 N.W.2d 631 (1977)).

■ In this case, N.G.'s *Spreigl* testimony was offered to show a common scheme or plan and to refute allegations of fabrication. The court of appeals stated that " 'common scheme and plan' evidence is commonly used to show identity indirectly by establishing a

modus operandi. But identity is not in dispute here; if there was an incident, appellant was the perpetrator. Further, the charged and *Spreigl* incidents were significantly different—without a common scheme or plan." *Kennedy*, 572 N.W.2d at 62.

 We disagree. First, the court of appeals incorrectly concluded that the charged and *Spreigl* incidents were "significantly different—without a common scheme or plan." *Id.* And second, the use of common scheme or plan evidence is not limited to instances when identity is at issue.

 *Spreigl* evidence need not be identical in every way to the charged crime, but must instead be sufficiently or substantially similar to the charged offense—determined by time, place and modus operandi. *See State v. Cogshell*, 538 N.W.2d 120, 123–24 (Minn.1995). The facts of this case indicate that the trial court did not abuse its discretion in concluding that there was a substantial similarity between the two incidents. First, the incidents occurred within six months of each other. Second, the time and place where each incident occurred were identical: late at night in N.G.'s bedroom. Finally, the modus operandi was nearly identical. On each occasion Kennedy left the mother's bedroom and went to N.G.'s room. In the charged offense, Kennedy rubbed N.G.'s thighs and made other sexual advances toward her—including attempting to place his penis in her vagina. In the *Spreigl* incident, Kennedy allegedly rubbed N.G.'s thighs and made other sexual advances toward her—including allegedly attempting to penetrate her digitally and offering her money for sex. Both incidents involved nearly identical advances and an attempted penetration; in other words, a common scheme or plan.

The court of appeals also erred by suggesting that such common scheme or plan evidence is only applicable in cases where identity is at issue. While it is true that common scheme or plan evidence is used in cases where identity is at issue, it is not limited to such use. We have repeatedly upheld the admission of *Spreigl* evidence on the issue of whether the act occurred. *See e.g., Wermerskirchen*, 497 N.W.2d at 241; *State v.*

*Anderson*, 275 N.W.2d 554, 555–56 (Minn. 1978) (admitting *Spreigl* evidence to show common scheme or plan and to refute defendant's allegation that the victim's testimony was a fabrication); *State v. Shuffler*, 254 N.W.2d 75, 76 (Minn.1977) (stating that the *Spreigl* evidence "was directly relevant to the jury's resolution of the key factual issue, which was whether defendant had taken indecent liberties with the victim, as she testified, or whether [the testimony was a fabrication] as defendant testified.").

 The *Spreigl* evidence in this case was offered for the identical purpose as the *Spreigl* evidence in both *Shuffler* and *Anderson:* to prove a common scheme or plan, and to refute defendant's contention that the victim's testimony was a fabrication. *See Anderson*, 275 N.W.2d 554; *Shuffler*, 254 N.W.2d at 76; *see also Wermerskirchen*, 497 N.W.2d at 242 (stating that where corpus delicti is at issue, particularly in child sex abuse cases, the trial court should admit the *Spreigl* evidence "if it is satisfied that the other crime is sufficiently relevant to the charged crime."). While it is important to make plain that such bad act evidence cannot be used to prove action in conformity therewith, it can be used to show a link between the bad act and the charged offense in order to establish a modus operandi, or to refute defendant's allegation that the charged incident was merely a fabrication. The trial court was clearly within its broad discretion in ruling that the *Spreigl* evidence was both relevant and material.

### III. Probative Value Versus Prejudicial Effect

 Even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. As we have stated:

> when balancing the probative value of *Spreigl* evidence against the potential for unfair prejudice, the trial court must consider how necessary the *Spreigl* evidence is to the state's case. [citations omitted] Only if the other evidence is weak or inadequate, and the *Spreigl* evidence is needed

as support for the state's burden of proof, should the trial court admit the *Spreigl* evidence.

*State v. Berry*, 484 N.W.2d 14, 17 (Minn. 1992) (citing *Landin*, 472 N.W.2d at 860); *see also DeWald*, 464 N.W.2d at 504 (stating that although the risk of prejudice is present whenever *Spreigl* evidence is admitted, in "weighing the probative value against the prejudicial effect, the trial court must consider the extent to which the *Spreigl* evidence is crucial to the state's case.").

 The final determination of the strength of the state's case should be made by the trial court after the state has presented all of its non-*Spreigl* evidence. *See DeWald*, 464 N.W.2d at 504. The record indicates that the trial court made such an assessment. First, the trial court discussed the state's DNA evidence, obtained from N.G.'s pajama shorts, and the fact that, in the words of the trial judge, it had "been kicked pillar to post for about five or six days." The trial court also discussed N.G.'s motivations, referring to Kennedy's claim that N.G. fabricated the story and the fact that she had at one time recanted her story. The trial court indicated that these factors clouded the state's evidence as to whether Kennedy committed the crime, making it a weak case.

 The court of appeals approached the issue differently. Rather than address whether the state's case was weak, the court of appeals instead analyzed whether the precise issue on which the *Spreigl* evidence is relevant was weak. *See Kennedy*, 572 N.W.2d at 63. In doing so, the court of appeals returned to decisions by this court made pre-*DeWald* which used the weak-issue rule rather than the weak-case rule. *Id.* (citing *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967); *State v. Stagg*, 342 N.W.2d 124, 127 (Minn.1984)). The court of appeals suggested that if the state were able to offer proof on an issue which is already strong, it would offend in two ways: "First, the *Spreigl* evidence is 'piling on' on that issue. Second, and more significantly, it presents to the jury evidence that is redundant, yet inherently prejudicial." *Id.* The court of appeals went further by stating that

by "using general terms like 'disputed issue' and 'state's burden of proof,' the supreme court has (I believe unintentionally) eroded the original issue-focused, weak-case requirement articulated in *Billstrom*." *Id.* (parenthetical comment in original).

 While the court of appeals is correct in its interpretation of *Billstrom* as requiring the use of the weak-issue rule, it failed to mention that *Billstrom* and its progeny are cases in which identity was at issue. In cases where some other matter is at issue, this court has stated that the weak-case rule should be applied. *See DeWald*, 464 N.W.2d at 504 (requiring that the *Spreigl* evidence be "necessary to support the state's burden of proof"); *State v. Slowinski*, 450 N.W.2d 107, 114 (Minn.1990) (stating that the trial court must consider whether the *Spreigl* evidence is necessary to support the state's burden of proof). Therefore, the trial court acted within its discretion by first weighing the evidence and assessing whether the state's case was weak or strong, then determining whether the *Spreigl* evidence should be admitted.

 The trial court was also within its discretion when it determined that the *Spreigl* evidence was more probative than prejudicial because the testimony was not admitted to arouse the jury's passion, but rather for the purpose of illuminating the relationship between Kennedy and N.G. and placing the incident with which Kennedy was charged in proper context. *See Volstad*, 287 N.W.2d at 662. Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value. Further, the fact that the trial court read two cautionary instructions to the jury—once before N.G. testified, patterned after 10 Minn. Dist. Judges Ass'n, *Minnesota Practice*, CRIMJIG 2.01 (3d ed.1990), and once at the close of the entire case, patterned after 10 Minn. Dist. Judges Ass'n, *Minnesota Practice*, CRIMJIG 3.16 (3d ed.1990)—lessened the probability of undue weight being given by the jury to the evidence. *See Slowinski*, 450 N.W.2d at 114–115.

Because the trial court did not abuse its discretion in admitting the *Spreigl* evidence,

we reverse the decision of the court of appeals and reinstate the judgment of the trial court.

Reversed.