**STATE of Minnesota, Respondent,**

v.

**Robert Quarry JACKSON, Appellant.**

No. C0-99-1534.

Court of Appeals of Minnesota.

Aug. 8, 2000.

Review Denied Oct. 17, 2000.

Mike Hatch, Attorney General, St. Paul; and Amy Klobuchar, Hennepin County Attorney, Gayle C. Hendley, Assistant County Attorney, Minneapolis, for respondent.

Melissa Sheridan, Assistant State Public Defender, St. Paul, for appellant.

Considered and decided by PETERSON, Presiding Judge, HALBROOKS, Judge, and PORITSKY, Judge.

## OPINION

BERTRAND PORITSKY, Judge.*

Appellant argues that the trial court erred in denying his motion to sever a charge of assault from charges of murder. Appellant also argues that the trial court abused its discretion in denying his motion for a Schwartz hearing to inquire into a juror's claim that another juror pressured her into changing her vote. We affirm.

## FACTS

Appellant Robert Quarry Jackson was charged with attempted aggravated robbery, second-degree assault, and two counts of second-degree murder arising from two separate incidents that both occurred on June 26, 1998, in Minneapolis.

The attempted aggravated robbery and second-degree assault arise from an incident that occurred at approximately 8:30 p.m. outside a Minneapolis homeless shelter. Appellant and Frank Mendoza got into an argument with Juan Esquivel about money. Mendoza stabbed Esquivel. Esquivel claimed that, after Mendoza started stabbing him, appellant encouraged Mendoza to continue the assault.

Appellant, Mendoza, and a third unknown man named Mike left the homeless shelter and traveled approximately four miles to a Northeast Minneapolis bar. At approximately 10:30 p.m., appellant, Mendoza, and Mike followed James Branby and Donald Pyle out of the bar. Once Branby and Pyle were seated in their vehicle in the bar parking lot, they were stabbed several times and died from their wounds within minutes. No personal effects, cash, or jewelry were taken from the victims.

Appellant was charged in a single complaint with two counts of second-degree murder for the Branby/Pyle murders, and charged with attempted aggravated robbery and assault for the Esquivel incident. Appellant testified that, although he witnessed at least part of both incidents, he did not participate in or encourage the criminal behavior in either incident. On the day of trial, appellant brought a motion to sever the first and second incidents into two trials. The trial court denied his motion. The jury found appellant guilty of assault, guilty on the two counts of second-degree murder, and not guilty of attempted aggravated robbery.

After the jury had returned its verdicts, the trial judge polled each member of the jury, and each answered individually that the above verdicts were true and correct as to that juror. The jury was thereupon discharged. Later, after sentencing, a juror came forward, claiming that she had been pressured into finding appellant

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

guilty after the jury foreman told her he was having a party and wanted to finish deliberations. The trial court found that this evidence did not warrant a Schwartz hearing. This appeal follows.

## ISSUES

I. Did the trial court prejudicially err when it denied appellant's motion to sever the offenses?

II. Did the trial court abuse its discretion when it denied appellant's motion for a Schwartz hearing?

## ANALYSIS

### I.

█ The trial court's ruling on severing claims, even if improper, will not be reversed unless "prejudicially erroneous." *State v. Profit,* 591 N.W.2d 451, 460 (Minn. 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 153, 145 L.Ed.2d 130 (1999).

### A. Severing Claims

█ Appellant argues that Minn. R.Crim. P. 17.03 requires severance because the offenses were not related. *See id.* at subd. 3(1)(a) (trial court *shall* sever offenses if "the offenses or charges are not related"). It is proper to join offenses for trial only if the offenses are part of a single behavioral incident. *Profit,* 591 N.W.2d at 460. The determination of whether offenses arise from a single behavioral incident is dependent upon the particular facts and circumstances of each case. *State v. Hawkins,* 511 N.W.2d 9, 13 (Minn.1994).

█ In deciding whether two crimes are part of a single behavioral incident, the focus is on the time and place of the crimes, with the additional consideration of "whether the segments of conduct involved were motivated by an effort to obtain a single criminal objective." *State v. Banks,* 331 N.W.2d 491, 493 (Minn.1983); *see also State v. Dukes,* 544 N.W.2d 13, 20 (Minn. 1996) ("In determining whether there should be separate trials for separate charges, we look to how the offenses were related in time and geographic proximity and at whether the actor was motivated by a single criminal objective.").

█ The facts of the present case show that the offenses occurred approximately two hours and four miles apart. These offenses, therefore, were related in both time and place. The state argues that the final requirement of a single criminal objective is present based on the fact that appellant's offenses "appear to be similarly motivated by [appellant's] willingness to react with deadly force when faced with little or no provocation." A propensity to use violence, however, does not satisfy the requirement of a single criminal objective. Therefore, the trial court erroneously joined the offenses. *See State v. Bookwalter,* 541 N.W.2d 290, 295 (Minn.1995) (holding that sexual assault and attempted murder were not part of a single behavioral incident where they occurred in or near the victim's van at two distinct times and places, and that a single common criminal objective failed to underlie both offenses); *State v. Stevenson,* 286 N.W.2d 719, 720 (Minn.1979) (holding that, while offenses both involved coerced sexual intercourse with same 15–year–old girl and both occurred in same general place on the same day, the offenses were separated by a period of approximately five hours and neither act bore any essential relationship to the other).

### B. Prejudicially Erroneous

█ Even when joinder of offenses is improper, "remand is not required if the district court's denial of the motion to sever was not prejudicially erroneous." *Profit,* 591 N.W.2d at 460. In *Profit,* the supreme court held that the Spreigl analysis for admitting other-crimes evidence is a useful framework for evaluating whether the trial court's failure to sever is so prejudicial that reversal is required. *Profit,* 591 N.W.2d at 461.

■ Spreigl evidence shall not be admitted in a criminal prosecution unless the court determines:

> (1) that the evidence is clear and convincing that the defendant participated in the other offense; (2) that the Spreigl evidence is relevant and material to the state's case; and (3) that the probative value of the Spreigl evidence is not outweighed by its potential for unfair prejudice.

*State v. Shannon,* 583 N.W.2d 579, 583 (Minn.1998).

### 1. Clear and Convincing

The jury found appellant guilty of the Esquivel assault and of the Brandby/Pyle murders. In light of these jury verdicts, which require proof beyond a reasonable doubt, the offenses were proven by clear and convincing evidence.

### 2. Relevance

■ The main issue here is whether this evidence is relevant and material to the state's case. In determining the relevance and materiality of Spreigl evidence,

> the trial court should consider the issues in the case, the reasons and need for the evidence, and whether there is a sufficiently close relationship between the charged offense and the Spreigl offense in time, place or modus operandi.

*State v. Kennedy,* 585 N.W.2d 385, 390 (Minn.1998) (quoting *State v. DeBaere,* 356 N.W.2d 301, 305 (Minn.1984)).

■ The state argues that the crimes are similar enough in modus operandi to be relevant. We agree. Both crimes are related in time and place, involved the stabbing of a victim, appear to be impulsive acts, and in both crimes the assailants fled in a get-away car. While the two crimes may not be so similar as to be signature crimes of each other, it is not required that the crimes be signature crimes in order to admit other-crime evidence. *State v. Slowinski,* 450 N.W.2d 107, 114 (Minn.1990).

■ The close relationship of the crimes also increases the relevance. *See Kennedy,* 585 N.W.2d at 390 (close relationship between events increases relevance or probative value of evidence). The crimes that were joined in appellant's case both involved stabbings within a two-hour period of time. The crimes were sufficiently similar to each other, closely related, and involved the same two alleged perpetrators to be admissible Spreigl evidence. *See State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983) ("In determining relevancy, we have generally required that the other crime be similar in some way—either in time, location, or modus operandi—to the charged offense, although this of course is not an absolute necessity."); *Kennedy,* 585 N.W.2d at 391 (Spreigl offense "need not be identical in every way to the charged crime, but must instead be sufficiently or substantially similar to the charged offense").

### 3. Unfair Prejudice

■ The third factor in the Spreigl analysis is whether the admitted evidence was unfairly prejudicial. In our view, two reasons support the conclusion that it was not. First, as noted above, evidence of either crime could be admitted to show modus operandi with respect to the other. *Id.* ("While it is important to make plain that such bad act evidence cannot be used to prove action in conformity therewith, it can be used to show a link between the bad act and the charged offense in order to establish a modus operandi * * *."). Second, appellant testified that he was not an active participant in either crime and did not know that violence was going to be used either time. To rebut this testimony with respect to the more serious crimes—the Branby/Pyle murders—the Esquivel stabbing just two hours earlier showed appellant's knowledge of Mendoza's potential for violence. For these reasons, the probative value of the other-crimes evidence outweighed the potential for unfair prejudice. Therefore, the joinder of these offenses was not prejudicially erroneous

because the joined offenses could have been admitted as Spreigl evidence. *See Profit,* 591 N.W.2d at 461 ("Because, absent joinder, evidence of either crime could have been used for legitimate means in a separate trial on each charge, we hold that joinder, although improper under Minn. R. 17.03, was not prejudicially erroneous.").[1]

## II.

The standard of review for the denial of a Schwartz hearing is abuse of discretion. *State v. Church,* 577 N.W.2d 715, 721 (Minn.1998). The granting of a Schwartz hearing is generally a matter of discretion for the trial court. *State v. Rainer,* 411 N.W.2d 490, 498 (Minn.1987). The trial court should be liberal in granting a hearing, but the defendant must first present evidence that if unchallenged would warrant the conclusion that jury misconduct occurred. *Id.*

Appellant's request for a Schwartz hearing was based on a conversation between two jurors, out of the hearing of the rest of the panel, in which one juror allegedly "pressured" another juror to change her position. The two allegations of misconduct are: (1) the fact that the conversation was outside of the hearing of the rest of the jurors; and (2) the content of the conversation.

As to the first allegation, none of the authorities cited by appellant address communication between jurors, but address communication *from a non-juror to a juror.* Minnesota rules governing jury conduct do not include any rules relating to a conversation between jurors out of the hearing of the other jurors. *See generally* Minn. R. Evid. 606(b). Appellant has failed to meet his burden of showing misconduct based on the fact that there was a communication between jurors. *See State*

*v. Pelawa,* 590 N.W.2d 142, 149 (Minn.App. 1999) ("defendant must establish a prima facie case of jury misconduct before a hearing is mandated").

The second allegation goes to the content of the conversation. Evidence of what happened in the jury room is inadmissible, except that evidence of improper extraneous prejudicial information, outside influence, or *threats of violence or violent acts* is admissible. Minn. R. Evid. 606(b) (emphasis added). Evidence of psychological intimidation, coercion, and persuasion is not admissible. *See* Minn. R. Evid. 606(b) cmt. ("trial court must distinguish between testimony about 'psychological' intimidation, coercion, and persuasion, which would be inadmissible, as opposed to express acts or threats of violence"). In this case, the jury foreman told another juror that he was having a party that night and "wanted to finish the case and get home." This conversation does not rise to the level of violence or threats thereof. The trial court did not abuse its discretion in denying appellant's motion for a Schwartz hearing.

## DECISION

The joinder of appellant's offenses, although improper under Minn. R. Crim P. 17.03, was not prejudicially erroneous where evidence of either crime could have been introduced as Spreigl evidence in a separate trial on the other charge. The trial court did not abuse its discretion in denying a Schwartz hearing to inquire into one juror's expressing to another juror a desire to finish deliberations.

**Affirmed.**

---

1. The trial court in this case used a Spreigl analysis to state that, even if the offenses are not part of a single behavioral incident, they would be admitted as Spreigl evidence, and thus were properly joined. The supreme court has recognized the danger of proceeding to a Spreigl analysis in a joinder case and reminded the trial courts "that if after careful

analysis they conclude the joined offenses do not constitute a single behavioral incident or course of conduct, they are to sever the charges." *Profit,* 591 N.W.2d at 461. We again caution the trial courts not to rely on a Spreigl analysis to circumvent the traditional joinder analysis.