*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0104**

State of Minnesota,
Respondent,

vs.

Damon Lamont Banks,
Appellant.

**Filed February 9, 2015
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-13-4787

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Carson J. Heefner, Heefner Nelson Law, P.A., St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Cleary, Chief Judge; and Hudson, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

The state charged appellant with two counts of first-degree criminal sexual conduct based on allegations that he sexually assaulted two brothers. A jury found appellant guilty of the offense against the younger brother and not guilty of the offense against the older brother. Appellant challenges his conviction, arguing that the district court erred by denying his motion to sever the offenses for trial and by denying his motion to present evidence that the older brother sexually abused the younger brother. He also argues that the evidence is insufficient to sustain his conviction. We affirm.

## FACTS

In February 2013, K.Y. reported to the Plymouth Police Department that appellant Damon Lamont Banks sexually assaulted her 14- and 10-year-old sons, M.Y. and G.C. K.Y. stated that she had known Banks since July 2012 and that she allowed her children to stay with Banks occasionally, so she "could get 'a break.'" K.Y. reported that M.Y. told her that Banks sexually assaulted M.Y. and G.C. while they stayed at Banks's residence in January 2013.

Employees of CornerHouse, an independent organization that interviews children in abuse cases, interviewed M.Y. and G.C. regarding the alleged sexual assault. M.Y. told the interviewer that Banks anally penetrated him with his penis. M.Y. also stated that Banks took him to Walmart, where Banks purchased condoms and a lubricant. M.Y. stated that Banks used the condoms and a lubricant during the sexual assault and that

Banks kept those items in a black bag in his bedroom. G.C. told the interviewer that Banks kissed him on the lips and anally penetrated him more than once.

Police officers executed a search warrant at Banks's apartment. They found a black bag with condoms and a lubricant in the location described by M.Y. They also found a Walmart bag containing an unopened box of condoms. The state charged Banks with two counts of first-degree criminal sexual conduct. One count was based on Banks's alleged assault of M.Y., and the other count was based on his alleged assault of G.C.

Before trial, Banks learned that in April 2013, M.Y. had been charged as a juvenile with first-degree criminal sexual conduct against G.C. Banks moved the district court to allow evidence regarding M.Y.'s alleged sexual abuse of G.C. at his trial and to sever the offenses for trial. The district court denied both motions.

The state called several witnesses at Banks's trial, including K.Y., M.Y., G.C., the two CornerHouse employees who interviewed G.C. and M.Y., and a doctor who examined the boys. Banks did not call any witnesses. The jury found Banks guilty of sexually assaulting G.C. and not guilty of sexually assaulting M.Y. Banks appeals.

## DECISION

Banks argues that the district court erred by denying his motions to sever the offenses for trial and to admit evidence that M.Y. sexually abused G.C. He also argues that the evidence is insufficient to sustain his conviction. We address each argument in turn.

**I.**

"When [a] defendant's conduct constitutes more than one offense, each offense may be charged in the same indictment or complaint in a separate count." Minn. R. Crim. P. 17.03, subd. 1. But a court "must sever offenses or charges if . . . [they] are not related." Minn. R. Crim. P. 17.03, subd. 3(1)(a). To determine whether offenses are "related," a court must determine whether the offenses "are part of a single behavioral incident." *State v. Ross*, 732 N.W.2d 274, 278 (Minn. 2007) (quotation omitted). That determination depends on "a three-faceted inquiry, looking to the time and place of the offenses and whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective." *Id.* (quotation and alterations omitted). "The determination of whether offenses arise from a single behavioral incident is dependent upon the particular facts and circumstances of each case." *State v. Jackson*, 615 N.W.2d 391, 394 (Minn. App. 2000), *review denied* (Minn. Oct. 17, 2000). An appellate court reviews a district court's denial of a motion to sever offenses under rule 17.03 de novo. *State v. Kendell*, 723 N.W.2d 597, 607 (Minn. 2006).[1]

Banks acknowledges that the offenses against M.Y. and G.C. meet the "temporal and geographic proximity" facets of the singular-behavioral-incident test, but he argues

---

[1] We recognize that the supreme court more recently wrote that the abuse-of-discretion standard applies. *Compare State v. Jackson*, 770 N.W.2d 470, 485 (Minn. 2009) ("We review a district court's denial of a motion to sever for abuse of discretion.") *with Kendell*, 723 N.W.2d at 607 ("[W]e hold that de novo review is the appropriate standard for reviewing a district court's denial of a motion for severance of offenses under Minn. R. Crim. P. 17.03."). We follow *Kendell* because the supreme court expressly considered and determined the applicable standard of review in that case, whereas in *Jackson*, the supreme court relied on a case that predates *Kendell*, without acknowledging its later express adoption of the de novo standard.

4

that he was not motivated by a single criminal objective. He quotes *State v. Profit* for the principle that "the existence of a common plan, alone, is simply insufficient to support joinder." 591 N.W.2d 451, 455, 460 (Minn. 1999) (holding that charges involving a May 1996 murder of one woman and an August 1996 sexual assault of another woman were improperly joined for trial). In this case, the record shows more than a common plan; it shows a single criminal objective. Banks misused his role as a trusted family friend to obtain temporary care and custody of two minor brothers so he could sexually abuse them. Once the boys were in his care, in his apartment, and behind his locked bedroom door, he sexually abused each one of them, subjecting each boy to anal penetration.

Banks's misuse of his caretaking role to commit similar acts of sexual abuse against a pair of siblings, in the same location, during the same timeframe supports a determination that Banks's behavior constitutes a single behavioral incident. Although our determination is based on the particular facts of this case, it is also consistent with caselaw holding that joinder was proper where a defendant committed similar crimes against two different victims, in the same geographic area, during the same time frame. *See State v. Dukes*, 544 N.W.2d 13, 15-17, 20 (Minn. 1996) (affirming denial of severance motion where defendant was charged with murder, attempted murder, and aggravated robbery after attempting to rob two different victims at gunpoint within a few blocks and minutes of each other); *State v. Dick*, 638 N.W.2d 486, 489, 490-91 (Minn. App. 2002) (affirming denial of severance motion where defendant was charged with burglarizing two different cabins located approximately one-half mile from each other, during the same early-morning time frame), *review denied* (Minn. Apr. 16, 2002); *cf.*

*State v. Blue*, 600 N.W.2d 148, 148-49, 150 (Minn. App. 1999) (holding that joinder was improper where defendant was accused of sexually assaulting two separate victims at the same location, but the incidents occurred more than one month apart), *review denied* (Minn. Sept. 28, 1999).

Because Banks's conduct constitutes a singular behavioral incident, the two charged offenses are related and severance was not required under rule 17.03, subdivision 3(1)(a). *See Kendell*, 723 N.W.2d at 608 (concluding that offenses were part of a single behavioral incident and therefore related). But that determination does not end our analysis. Severance is also required if "appropriate to promote a fair determination of the defendant's guilt or innocence of each offense or charge." Minn. R. Crim. P. 17.03, subd. 3(1)(b). Accordingly, after a court determines that two offenses are related, it also "must determine whether joinder would prejudice the defendant." *Kendell*, 723 N.W.2d at 607. We therefore consider whether joinder unfairly prejudiced Banks. *See id*. at 608 (considering whether joinder was unfairly prejudicial after determining that offenses were related).

"Joinder is not unfairly prejudicial if evidence of each offense would have been admissible at a trial of the other offenses had the offenses been tried separately." *Id.* Because the purpose of an appeal regarding both joinder and *Spreigl* issues is to determine whether the introduction of evidence of other crimes was prejudicial, a *Spreigl* analysis "serves as a useful framework for evaluating the possible prejudicial effect of improperly joining offenses." *Profit*, 591 N.W.2d at 461. We therefore consider whether

one of Banks's offenses would have been admissible as *Spreigl* evidence at a separate trial for the other offense.

Five conditions must be met for *Spreigl* evidence to be admissible:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Ross*, 732 N.W.2d at 282 (quotation omitted). "For purposes of analyzing whether prejudice resulted from improper joinder, [appellate courts] focus on the third, fourth, and fifth conditions." *Id.*

Because Banks was convicted of the offense involving G.C., there is clear-and-convincing evidence of his participation in that offense. *See Jackson*, 615 N.W.2d at 395 ("In light of these [guilty] verdicts, which require proof beyond a reasonable doubt, the offenses were proven by clear and convincing evidence."). But the inverse conclusion does not result from Banks's acquittal of the offense involving M.Y. In *Ross*, the supreme court concluded that the district court improperly joined four offenses. 732 N.W.2d at 280. In its *Spreigl* analysis to determine whether the improper joinder was prejudicial, the supreme court stated that a "jury's determination that a defendant is not guilty of a particular crime does not preclude a subsequent determination that, at the time of the trial, the defendant's participation in underlying conduct related to the acquitted offense was supported by clear and convincing evidence." *Id.* at 281.

7

Following this approach, we consider whether, at the time of trial, there was clear-and-convincing evidence that Banks sexually assaulted M.Y. Prior to trial, M.Y. reported to his mother and a CornerHouse interviewer that Banks sexually assaulted him. He also described the bag of condoms and lubricant that officers found in Banks's bedroom, along with a Walmart bag containing condoms. Those items corroborate M.Y.'s report that he was with Banks at Walmart when Banks purchases similar items and that Banks used such items during the sexual assault. This evidence clearly and convincingly showed that Banks sexually abused M.Y. *See State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998) (stating that *Spreigl* evidence meets the clear-and-convincing standard "when the truth of the facts sought to be admitted is highly probable" (quotation omitted)).

We next consider whether evidence of each offense is relevant and material to the state's case regarding the other offense. *Ross*, 732 N.W.2d at 282. When determining the relevance and materiality of *Spreigl* evidence, courts consider "the issues in the case, the reasons and need for the evidence, and whether there is a sufficiently close relationship between the charged offense and the *Spreigl* offense in time, place or modus operandi." *Jackson*, 615 N.W.2d at 395 (quotation omitted).

Banks concedes that the timing of the offenses makes the offenses somewhat relevant to one another, but he asserts that relevancy ends there. He highlights insignificant differences between the boys' descriptions of Banks's conduct. For example, unlike M.Y., G.C. did not testify that he was with Banks at Walmart when Banks bought condoms, that Banks assaulted him outside his apartment, or that Banks

showed him pornographic material. But there are marked similarities between the charged offenses: each sibling reported that Banks anally penetrated him while he was in Banks's care, in Banks's bedroom, in January 2013. *See State v. Ness*, 707 N.W.2d 676, 688 (Minn. 2006) ("We take this opportunity to clarify that in determining whether a bad act is admissible under the common scheme or plan exception, it must have a marked similarity in modus operandi to the charged offense.").

Moreover, in criminal-sexual-conduct cases where the defendant denies that sexual conduct occurred, as Banks did, evidence of other instances of sexual misconduct is "highly relevant." *State v. Wermerskirchen*, 497 N.W.2d 235, 242 (Minn. 1993). The evidence "serve[s] to complete the picture of defendant, to put his current conduct in its proper and relevant context, not to paint another picture or lead the jury to convict on the basis of an irrelevancy." *Id.* at 242-43. It is "relevant both to show that defendant did what he was accused of doing and to show his intent." *Id.* at 243. For those reasons, evidence of each offense in this case is relevant and material to the state's case regarding the other offense. *See Kennedy*, 585 N.W.2d at 391 ("*Spreigl* evidence need not be identical in every way to the charged crime, but must instead be sufficiently or substantially similar to the charged offense—determined by time, place and modus operandi.").

We last consider whether the probative value of the evidence is outweighed by its potential for unfair prejudice. *Ross*, 732 N.W.2d at 282. The jury's return of a not-guilty verdict on the offense against M.Y. shows that it separately considered the offenses and that the potential for unfair prejudice did not outweigh the probative value. *See id.* at 283

9

n.7 ("[The defendant] was ultimately acquitted of [one of the joined offenses], indicating that the jury weighed each charge separately and that the admission of evidence relating to each of the . . . offenses did not result in prejudice to Ross.").

In sum, because the *Spreigl* factors favor admission of the evidence, evidence of each offense would have been admissible at a trial of the other offense had the offenses been tried separately. Joinder therefore was not unfairly prejudicial. *See Kendell*, 723 N.W.2d at 608.

## II.

Minnesota's rape-shield statute and Minnesota Rule of Evidence 412 generally provide that, in a prosecution for acts of criminal sexual conduct, "evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury." Minn. Stat. § 609.347, subd. 3 (2012); Minn. R. Evid. 412(1). But such evidence is admissible "in all cases in which admission is constitutionally required by the defendant's right to due process, his right to confront his accusers, or his right to offer evidence in his own defense. *State v. Benedict*, 397 N.W.2d 337, 341 (Minn. 1986). Specifically, "a [district] court has discretion to admit evidence tending to establish a source of knowledge of or familiarity with sexual matters in circumstances where the jury otherwise would likely infer that the defendant was the source of the knowledge." *Id.*

When deciding whether to admit evidence of a victim's previous sexual conduct to establish a source of knowledge, the district court must balance the probative value of the evidence against its potential for unfair prejudice. *Id.* We review the district court's

ruling for an abuse of discretion. *See id.* (referring to a district court's "discretion to admit evidence tending to establish a source of knowledge"). "A court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011).

Banks moved to admit evidence that M.Y. sexually abused G.C. to show that G.C. had an alternative source of sexual knowledge. In ruling on Banks's motion, the district court relied on rule 412, the rape-shield law, and Banks's constitutional right to present evidence regarding an alternative source of sexual knowledge. The district court considered Banks's request on three occasions. The district court initially denied Banks's motion, concluding that the rape-shield law precluded the evidence. When Banks raised the alternative-source-of-knowledge theory, the district court revised its ruling and said it would allow the evidence "with certain limitations," reasoning that Banks's constitutional right to present a complete defense and confront witnesses trumped the rape-shield law. The district court said it would allow evidence regarding "any instance of inappropriate sexual conduct that may have been committed against [G.C.] by [M.Y.] either before . . . or contemporaneous with the allegations in the complaint to show his sexual knowledge. Not after." The district court explained, "I'm trying to balance . . . [Banks's] need for the testimony and . . . the privacy of the two victims."

On the morning of Banks's trial, the prosecutor advised the district court that M.Y.'s alleged abuse of G.C. may have occurred after Banks's alleged offenses. The district court therefore decided to conduct an in-camera review of the petition, police report, and interview regarding M.Y.'s juvenile charge. Based on its review, the district

11

court concluded that M.Y.'s alleged abuse of G.C. happened *after* Banks's alleged offenses and ruled that evidence regarding M.Y.'s alleged abuse was inadmissible. Essentially, the district court reasoned that the evidence lacked probative value because M.Y.'s alleged sexual abuse of G.C. could not establish G.C.'s source of sexual knowledge regarding Banks's alleged offense if M.Y.'s alleged abuse occurred after Banks's offense. *See Benedict*, 397 N.W.2d at 341 (upholding the district court's ruling on evidence of other sexual conduct "given the weak probative value of the evidence").

The documents available to the district court support that timeline. G.C.'s mother reported Banks's sexual assault of G.C. in February 2013. The district court noted that the police reports regarding M.Y.'s alleged abuse of G.C. indicate that the abuse did not occur until April. In addition, G.C. stated in his February CornerHouse interview that nothing like what Banks did to him had happened to him before. Lastly, G.C. stated in his April CornerHouse interview that M.Y. abused him "after [Banks]."

Banks argues that because of "the seriousness of the allegations against [him], and the resulting prison sentence under the [Minnesota Sentencing Guidelines]," he should have been allowed to question G.C. about M.Y.'s alleged abuse. Banks argues that G.C. might have testified that M.Y.'s alleged abuse occurred before the charged offenses. We are not persuaded. The decision to admit evidence of a victim's prior sexual conduct is not determined by the potential penalty associated with a criminal charge. And Banks acknowledges that M.Y.'s juvenile "file contained information that G.C. claimed [that M.Y.] allegedly abused him after [Banks]."

In sum, the district court correctly applied the law and logically determined that evidence regarding M.Y.'s alleged abuse of G.C. could not establish G.C.'s source of sexual knowledge regarding Banks's alleged sexual assault unless the alleged abuse preceded Banks's assault. Because there is no indication that M.Y. abused G.C. before G.C. reported Banks's assault, we discern no abuse of discretion in the district court's ruling. *See Riley*, 792 N.W.2d at 833.

**III.**

When considering a claim that the evidence is insufficient to support a conviction, "this court thoroughly examines the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict they did." *State v. Crockson*, 854 N.W.2d 244, 247 (Minn. App. 2014), *review denied* (Minn. Dec. 16, 2014). "We assume that the jury believed all of the state's witnesses and disbelieved any evidence to the contrary." *Id.* (quotation omitted). "We will not alter a verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Id.* We "defer to the fact-finder on determinations of credibility." *State v. Watkins*, 650 N.W.2d 738, 741 (Minn. App. 2002). The "resolution of conflicting testimony is the exclusive function of the jury[, which] has the opportunity to observe the demeanor of witnesses and weigh their credibility." *State v. Lloyd*, 345 N.W.2d 240, 245 (Minn. 1984). "Even inconsistencies in the state's case will not require a reversal of the jury verdict." *Id.* (quotation omitted).

13

Banks was convicted under Minn. Stat. § 609.342, subd. 1(a) (2012), which states that a person is guilty of first-degree criminal sexual conduct if he engages in sexual penetration with a victim under the age of 13 and the person is more than 36 months older than the victim.[2] G.C. was 11 years old at the time of trial. He testified that he sometimes slept at Banks's house and in Banks's bed. The prosecutor asked G.C., "Now, one of the times you were over at [Banks's] house, did something happen to you that you didn't like very much?" G.C. responded, "Yeah." G.C. described an incident that occurred in Banks's bedroom when the door was locked and he and Banks were in Banks's bed, unclothed. According to G.C.'s testimony, Banks put his penis "[k]ind of all the way" into G.C.'s "butt." G.C. testified that he told M.Y. and the CornerHouse interviewer about the incident.

In a prosecution for criminal sexual conduct, the state is generally not required to corroborate the victim's testimony. Minn. Stat. § 609.347, subd. 1 (2012). Banks acknowledges that principle, but he asserts that because G.C. made inconsistent statements regarding the sexual assault before and during trial, "his testimony [is] suspect enough that corroboration was required." Banks relies on *State v. Ani*, in which the supreme court stated that "the absence of corroboration in an *individual* case may well call for a holding that there is insufficient evidence upon which a jury could find the defendant guilty beyond a reasonable doubt." 257 N.W.2d 699, 700 (Minn. 1977) (quotation and alterations omitted).

---

[2] There is no dispute that Banks is more than 36 months older than G.C.

Banks contends that G.C. made inconsistent statements regarding whether Banks sexually assaulted him. Banks argues that G.C. admitted during cross-examination that he "told his mother that he was not abused by [Banks]." Banks also argues that G.C. told the CornerHouse interviewer "that he was sorry, and that [Banks] didn't commit sexual assault." The transcripts indicate that G.C.'s exonerating statement to the CornerHouse interviewer referred to Banks's alleged assault of M.Y. and not to his assault of G.C. Moreover, the CornerHouse interviewer provided testimony that could have explained G.C.'s inconsistent statement to his mother to the jury's satisfaction. The interviewer testified that G.C. "mentioned several times feeling like he was at fault or like he was responsible and had done something wrong and that he hadn't gotten any messages from anyone else that it wasn't his fault."

Banks also contends that G.C. made inconsistent statements regarding whether he was awake when the assault occurred and whether or not he felt it. But the record shows that G.C.'s statements on these points were generally consistent. Essentially, G.C. said that he was asleep when the assault began and that he woke up during the assault. He also testified that the assault hurt. Even if G.C. made inconsistent statements regarding the details of the assault, inconsistencies in the state's case do not require a reversal. *See Lloyd*, 345 N.W.2d at 245. The jury's verdict indicates that it found G.C. credible, which was its prerogative. *See id.*

Banks also highlights the lack of physical evidence. Banks argues that the physician who examined G.C. testified that there were no signs of physical abuse and that the investigators did not gather physical evidence from the crime scene in an attempt to

obtain DNA evidence. However, the examining physician also testified that any injuries resulting from the sexual assault could have healed during the time between the assault and G.C.'s examination. As to the lack of DNA evidence, there is no requirement that the state present such evidence.

We note that several of the state's witnesses corroborated G.C.'s testimony. M.Y. and K.Y. testified that G.C. told them about the sexual assault. A forensic interviewer with CornerHouse testified that G.C. told her that during a visit to Banks's house, Banks took off G.C.'s clothes, put his penis in G.C.'s "butt," and "bounced up and down." The interviewer also testified that G.C. demonstrated the sexual assault using an anatomical doll. The examining physician testified that G.C. told him that Banks anally penetrated G.C. with his penis "several times" in January. To the extent that corroboration is necessary, G.C.'s generally consistent description of the sexual assault provides adequate corroboration. *See State v. Myers*, 359 N.W.2d 604, 608 (Minn. 1984) (finding that victim's testimony was unnecessarily but effectively corroborated by her general, consistent reports to others).

In sum, we defer to the jury's resolution of any conflicting evidence and to its determination that G.C. was credible. And based on that deference, we conclude that the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that Banks was guilty of the charged offense against G.C. We therefore do not alter the verdict.

**Affirmed.**

16