*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0546**

State of Minnesota,
Respondent,

vs.

Dalvin Jarrell Crockett,
Appellant.

**Filed March 9, 2026
Affirmed
Larson, Judge**

Hennepin County District Court
File No. 27-CR-24-3987

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, N. Nate Summers, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bond, Presiding Judge; Frisch, Chief Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

In this direct appeal, appellant Dalvin Jarrell Crockett challenges his first-degree criminal-sexual-conduct and first-degree aggravated-robbery convictions. *See* Minn. Stat. § 609.342, subd. 1(b) (2022) (first-degree criminal sexual conduct); Minn. Stat. § 609.245,

subd. 1 (2022) (first-degree aggravated robbery). Crockett argues the district court abused its discretion when it admitted prior-bad-acts evidence and disqualified a juror who discussed the case after being mistakenly excused as an alternate juror. We affirm.

**FACTS**

The following facts were elicited at a jury trial. Crockett began communicating with a woman (alleged apartment victim) on a sex-worker website in February 2024. The pair arranged for Crockett to come to the sex-worker's apartment. While wearing a black ski mask, Crockett entered her apartment, pointed a black gun at her, and instructed her to turn around and get on the bed. Crockett then penetrated the alleged apartment victim with his penis without her consent and brandished a second gun that was tan in color. After the assault, Crockett forced the alleged apartment victim to unlock her phone. While using her phone, Crockett sent himself money using a peer-to-peer payment application, deleted her call log, and wiped down the phone. Crockett then took the alleged apartment victim's cash and phone before leaving the apartment.

Three days later, Crockett communicated with another woman (alleged hotel victim) via the same sex-worker website and the pair arranged to meet at a hotel. Crockett arrived at a hotel wearing a black ski mask and pointed a black gun at her. At one point, Crockett also brandished a tan gun. Crockett instructed the alleged hotel victim to get on the bed facing away from him and sexually assaulted her. After the assault, Crockett took a picture of the alleged hotel victim's driver's license. Crockett also accessed her tablet and deleted their text exchange before taking between $400 and $600 and leaving the hotel.

Respondent State of Minnesota charged Crockett with first-degree criminal sexual conduct and first-degree aggravated robbery for the incident involving the alleged apartment victim. Prior to trial, the state filed a notice of its intent to use prior-bad-acts evidence, or *Spreigl* evidence, pursuant to Minn. R. Evid. 404(b). *See State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965). As relevant here, the state sought to admit evidence about the incident involving the alleged hotel victim. The state argued it would use this *Spreigl* evidence to prove motive, intent, common scheme or plan, and identity. The district court granted the state's motion because of the "marked similarity" between the charged conduct (the incident involving the alleged apartment victim) and the *Spreigl* evidence (the incident involving the alleged hotel victim).[1]

A jury trial was held in November 2024. The jury was impaneled and sworn. The jury included twelve principal jurors and two alternate jurors.[2] As relevant here, the state called the alleged hotel victim who testified consistently with the facts above. The district court provided a limiting instruction to the jury, both before the alleged hotel victim testified and before closing arguments.

---

[1] The state sought to admit four separate incidents involving separate victims as *Spreigl* evidence. The district court disallowed evidence of the other three incidents because they lacked a "marked similarity in modus operandi" and would have created an unfair advantage for the state.

[2] The Minnesota Rules of Criminal Procedures use the terms "principal juror" and "alternate juror" to distinguish jurors who do and do not participate in deliberation. *See* Minn. R. Crim. P. 26.02, subd. 9 ("The court may impanel alternate jurors. An alternate juror who does not replace a principal juror must be discharged when the jury retires to consider its verdict."). For clarity, we use these terms throughout.

During final instructions and before deliberations, the district court confused a principal juror with an alternate juror and improperly discharged the principal juror and allowed the alternate juror to begin deliberations. After Crockett's defense counsel informed the district court of the mistake, the discharged principal juror was brought back for questioning. During questioning, the discharged principal juror told the district court that they had shared their thoughts and briefly discussed the case with the discharged alternate juror. The district court disqualified the discharged principal juror and allowed the non-discharged alternate juror to deliberate.

The jury returned guilty verdicts on both counts. The district court entered convictions on both counts and sentenced Crockett to 144 months in prison for first-degree criminal sexual conduct and a consecutive 48 months in prison for first-degree aggravated robbery, followed by ten years of conditional release.

Crockett appeals.

## DECISION

Crockett argues the district court abused its discretion when it: (1) admitted the *Spreigl* evidence regarding the alleged hotel victim; and (2) disqualified the discharged principal juror. We review the district court's decisions on these matters for an abuse of discretion. *See State v. Griffin*, 887 N.W.2d 257, 261-62 (Minn. 2016) (*Spreigl* evidence); *State v. Nyonteh*, 24 N.W.3d 271, 282 (Minn. 2025) (juror disqualification).[3] "A district

---

[3] Crockett briefly argues that we should apply a de novo standard of review because the district court caused the error. But Crockett then proceeds to apply the abuse-of-discretion standard in *Nyonteh*. Because the circumstances here, like in *Nyonteh*, involve excusing a

court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (quotation omitted). We address each of Crockett's arguments in turn.

## I.

Crockett first challenges the district court's decision to admit the *Spreigl* evidence. Under Minn. R. Evid. 404(b)(1), *Spreigl* evidence—meaning "evidence of another crime, wrong, or act"—is inadmissible "to prove the character of a person in order to show action in conformity therewith." But *Spreigl* evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b)(1).

Before the state can admit *Spreigl* evidence it must: (1) provide "notice that the state intends to use the evidence"; (2) clearly indicate "what the evidence is being offered to prove"; [4] (3) offer "clear and convincing proof that the defendant participated in the other offense"; [5] (4) prove "the *Spreigl* evidence is relevant and material to the state's case"; and

---

principal juror to ensure the fairness of the trial, we apply the abuse-of-discretion standard. 24 N.W.3d at 282.

[4] In his reply brief, Crockett appears to challenge the second element, contesting the district court's decision that the *Spreigl* evidence was admissible to prove motive. But Crockett did not raise this issue in his principal brief, and we generally do not reach issues raised for the first time in a reply brief. *See State v. Stockwell*, 770 N.W.2d 533, 541 (Minn. App. 2009); *see also McIntire v. State*, 458 N.W.2d 714, 717 n.2 (Minn. App. 1990) (stating arguments not made in appellant's brief may not be revived in a reply brief), *rev. denied* (Minn. Sept. 28, 1990). Therefore, we do not reach this argument.

[5] In his self-represented supplemental brief, Crockett appears to challenge the third element without making any legal argument or citing legal authority. Therefore, we do not reach this issue. *See State v. Taylor*, 869 N.W.2d 1, 22 (Minn. 2015) (generally, briefs without an argument or citation to legal authority in support of allegations are deemed waived).

(5) prove "that the probative value of the *Spreigl* evidence is not substantially outweighed by its potential for unfair prejudice." *State v. Washington*, 693 N.W.2d 195, 201 (Minn. 2005) (citing *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998)).

Here, Crockett argues—both in his principal brief and his self-represented supplemental brief—that the district court abused its discretion when it admitted the *Spreigl* evidence, challenging the application of the balancing test. When applying the balancing test, a district court must "balance the relevance of the bad acts, the risk of the evidence being used as propensity evidence, and the [s]tate's need to strengthen weak or inadequate proof in the case." *State v. Scruggs*, 822 N.W.2d 631, 644 (Minn. 2012) (quotation omitted).

The record demonstrates that the district court acted well within its discretion in its application of the balancing test. Specifically, the district court found the *Spreigl* evidence was probative to show motive because both incidents involved meeting a woman on the same sex-worker website and using the information from that interaction to sexually assault and rob them. The district court also found the *Spreigl* evidence was probative to show common scheme or plan given the striking similarities between the two incidents, including that Crockett: (1) met both alleged victims on the same sex-worker website; (2) "made plans to exchange sexual services with [both] victim[s] for money"; (3) met both victims at their "place of residence"; (4) used "two handguns" to threaten the alleged victims "to comply with his sexual assault"; (5) "penetrated [both] victim's vagina[s] with his penis"; and (6) "deleted his phone number from [both] victim's phone[s]."

6

The district court then balanced the probative value of the evidence against the potential for unfair prejudice, determining the evidence was highly relevant given the "marked similarity" between the two incidents and strengthened the state's case because it corroborated the alleged apartment victim's version of events. *See Scruggs*, 822 N.W.2d at 644 (requiring the court to balance the relevance of the *Spreigl* evidence and the "[s]tate's need to strengthen" its case). Further, the district court provided two instructions to limit the risk that the *Spreigl* evidence was used for an improper purpose. *See id.* (requiring the court to balance the "risk of the evidence being used as propensity evidence"); *see also State v. Segura*, 2 N.W.3d 142, 167 (Minn. 2024) (providing that appellate courts presume a jury follows a district court's instructions).

Upon this record, we conclude the district court appropriately exercised its discretion in its application of the balancing test. Accordingly, the district court did not abuse its discretion when it admitted the *Spreigl* evidence.

## II.

Crockett next argues the district court abused its discretion when it disqualified the mistakenly discharged principal juror. When exercising its discretion to excuse a juror, a district court should determine if the juror is "[a]ble to render satisfactory jury service." *Nyonteh*, 24 N.W.3d at 281-82 (quoting Minn. Gen. R. Prac. 808(b)(5)). When a district court's concerns about a juror's ability to render satisfactory jury service implicate the trial's fairness, "it is appropriate for the district court to exercise its discretion to address

7

those concerns." *Id.* at 282. But in criminal cases, the principal juror must be replaced with an alternate juror. *Id.* (citing Minn. R. Crim. P. 26.02, subd. 9).

Here, over Crockett's objection, the district court disqualified the discharged principal juror on the basis that the discharged principal juror had discussed the case with the discharged alternate juror. The district court did so because it had already instructed the jury not to discuss the case or disclose the status of deliberations "to anyone outside the jury room." Thus, the district court determined that it would be unfair to allow the discharged principal juror to deliberate because they admittedly could not comply with this direction. Under these facts, the district court's concern about the discharged principal juror's ability to render satisfactory service, which implicated the trial's fairness, was not erroneous or against the facts in the record. *See Nyonteh*, 24 N.W.3d at 282. Accordingly, we conclude the district court did not abuse its discretion when it disqualified the discharged principal juror.

**Affirmed.**