*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1678**

State of Minnesota,
Respondent,

vs.

Eric Jerome Johnson,
Appellant.

**Filed January 20, 2015
Affirmed in part, reversed in part, and remanded
Reilly, Judge**

Scott County District Court
File No. 70-CR-12-10427

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Reilly, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

This matter is before us on remand from the supreme court (1) to reconsider the *Spreigl* evidence in light of the "markedly similar" test outlined in *State v. Ness*, 707 N.W.2d 676 (Minn. 2006), and (2) to reconsider whether this court should vacate one of appellant's two convictions for first-degree criminal sexual conduct under *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007). We conclude that the evidence shows a marked similarity between the *Spreigl* offense and the charged offense, and we affirm the conviction. However, because the order and warrant of commitment do not accurately reflect the district court's oral pronouncement during sentencing, we reverse and remand with instructions to correct the warrant of commitment to reflect judgment of conviction for one count of first-degree criminal sexual conduct.

## FACTS

On March 8, 2012, 15-year-old T.R. traveled to Minnesota with her family and stayed in appellant's house with appellant, his wife, and his daughter. Appellant is T.R.'s uncle. On March 10, T.R. fell asleep in appellant's daughter's bedroom. She awoke during the night with the sense that someone had been touching her breasts. T.R. thought she saw someone in the room, although she could not identify who it was. T.R. believed she saw a shadow by the closet. T.R. could not distinguish whether someone was standing in the room with her or not, and she fell back to sleep. T.R. next remembered feeling as though someone was lying on top of her. T.R. was partially undressed with both her right pant leg and her right underpants leg off. She felt a "shove" and felt

someone put his penis into her vagina. T.R. woke up completely and flinched from the pain. T.R. felt someone jump off of her and run out of the room, and she recognized the individual as appellant.

The following day, T.R. and her mother reported the crime to the police. T.R. submitted to a sexual assault examination and a forensic physical examination, provided a urine sample, and underwent a speculum exam, which included swabs from her cervix, perineum, and vagina. The Minnesota BCA analyzed the samples collected from T.R.'s examination and identified semen on the vaginal, cervical, and perineal swabs. The DNA tests determined that appellant could not be excluded from the analysis and 99.9999998% of the general population could be excluded. The state charged appellant with one count of first-degree criminal sexual conduct.

As part of their investigation, detectives discovered appellant had a 2002 second-degree criminal sexual conduct conviction arising out of sexual contact with his then-girlfriend's 12-year-old daughter. In that case, appellant habitually entered the girl's bedroom at night to touch her buttocks and vaginal area. Appellant pleaded guilty to that offense and served a 39-month executed sentence. The state sought to introduce *Spreigl* evidence of this conviction to show intent, knowledge, lack of mistake, and modus operandi.[1] The district court granted the state's request based on its determination that the 2002 conviction involved a victim living in the same household as the appellant at the time of the offense, and that the sexual conduct took place at night when the victim was asleep in her bed. The district court concluded that:

---

[1] *State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965).

> These facts meet the materiality and relevance requirements of *Spreigl*. The location of the offenses, the status of the victim, and the circumstances of the abuse are remarkably similar. Moreover, in both cases, the victim was a child that was known to [appellant] and was someone the child knew as a household member.

A jury trial was held in April 2013. The state amended the complaint to add a second count of first-degree criminal sexual conduct. Appellant testified that he entered the bedroom in the middle of the night and saw T.R. lying on the bed masturbating, so he began to masturbate himself. Appellant stated that he ejaculated and then returned to his bedroom. Appellant admitted during cross-examination that he is attracted to developed young girls between the ages of 12 and 15. Appellant acknowledged that he has a problem and testified that he and his wife took precautions to ensure that young girls were safe in their home. These precautions include: not bathing or changing his daughters or allowing them to have friends sleep over at the house. Appellant's wife was also permitted to testify that appellant was attracted to physically developed young girls and that he underwent sex-offender treatment. Although appellant initially objected to his wife testifying based on spousal privilege, he did not object to her specific testimony regarding his attraction to young girls.

Before the state presented *Spreigl* testimony and by agreement of the parties, the district court gave the standard cautionary instruction to the jury regarding testimony of other crimes. The *Spreigl* witness testified that appellant dated her mother from 1999 to 2001. Between 2000 and 2001, appellant lived with the witness and her mother. The witness reported that, starting when she was 11 years old, there were over 20 sexual

4

incidents involving appellant and the witness. During one incident, appellant walked into the witness's bedroom while everybody was asleep and began groping her. When she opened her eyes, appellant was hiding against the closet door, "camouflag[ing] himself into the night." The witness described this activity as "ongoing behavior," during which appellant visited her bedroom and sexually assaulted her while she was asleep.

The jury found appellant guilty of both counts of first-degree criminal sexual conduct. The district court ordered a presentence investigation, which revealed that the presumptive guidelines sentence with appellant's criminal history score was the statutory maximum. The district court committed appellant to the commissioner of corrections for 360 months. According to the sentencing hearing transcript, the district court formally adjudicated and sentenced appellant on count one only, of criminal sexual conduct in the first degree, significant relationship, with the second count merging for sentencing purposes.

On appeal, appellant challenged admission of the *Spreigl* evidence and argued that he was improperly convicted of two counts of first-degree criminal sexual conduct based on the same criminal act against the same complainant. This court affirmed. *State v. Johnson*, A13-1678 (Minn. App. Aug. 11, 2014). The supreme court granted appellant's petition for review and affirmed in part, vacated in part, and remanded with directions to consider (1) whether this court erred in applying the "substantially similar" standard in its analysis of the *Spreigl* evidence, and (2) whether it erred in refusing to vacate one of appellant's convictions for first-degree criminal sexual conduct. We did not order the

5

parties to file supplemental briefs or memoranda, and the case was submitted without additional oral argument.

## D E C I S I O N

### I.

Appellant challenges the admission of *Spreigl* evidence at trial. Evidence of past crimes or bad acts, or *Spreigl* evidence, is generally not admissible to prove the character of a person or that the person acted in conformity with that character in committing an offense. Minn. R. Evid. 404(b). But *Spreigl* evidence may be admissible to demonstrate factors such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Admission of *Spreigl* evidence rests within the sound discretion of the district court and is reviewed under an abuse-of-discretion standard. *Ness*, 707 N.W.2d at 685. Appellant bears the burden of showing that an error occurred and that he was prejudiced. *State v. Clark*, 738 N.W.2d 316, 345 (Minn. 2007).

District courts perform a five-prong analysis in determining whether *Spreigl* evidence is admissible:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Ness*, 707 N.W.2d at 685-86. Here, the first three elements are uncontested.

First, appellant contends that the *Spreigl* evidence was not relevant and material to the state's case. Appellant argues that the district court did not identify the real purpose

6

for which the *Spreigl* evidence was offered. In determining whether a bad act is admissible under the common scheme or plan exception, it must have a "marked similarity in modus operandi to the charged offense." *Id.* at 688. In determining the relevance of *Spreigl* evidence, the district court should "focus on the closeness of the relationship between the other crimes and the charged crimes in terms of time, place and modus operandi." *State v. Wermerskirchen*, 497 N.W.2d 235, 240 (Minn. 1993) (citation omitted).

The prosecutor's reasons for seeking to admit the 2002 incident were to prove lack of mistake, knowledge, identity, and modus operandi. Although the district court did not specifically identify the "real purpose" for admitting the evidence, the court's reasons for admitting the 2002 incident plainly demonstrate that it was to show a common scheme or plan or modus operandi because the prior incident was "remarkably similar" to the current offense. The district court determined that the facts giving rise to the 2002 conviction "[met] the materiality and relevance requirements of *Spreigl*." The district court found that the incident was "remarkably similar" to the current offense due to the location, the age of the victims, and the circumstances. Specifically, the district court found that in both instances the victims were children known to appellant as a household member, and that the sexual assaults occurred in the child's bedroom while the child was sleeping alone in her bed. The supreme court has recognized that other-acts evidence is admissible under the common scheme or plan exception to show "that the conduct on which the charged offense was based actually occurred or to refute the defendant's contention that the victim's testimony was a fabrication or a mistake in perception."

7

*Ness*, 707 N.W.2d at 688 (quoting *Wermerskirchen*, 497 N.W.2d at 241-42). The district court had a legitimate purpose for admitting the evidence to show that the conduct actually occurred.

The district court acknowledged that the offenses are separated by approximately ten years. Minnesota recognizes that bad acts that are remote in time may still be relevant if the defendant was incarcerated during that time. *Id.* at 689. For incarceration, a court may subtract the length of incarceration from the time that has passed since the charged offense. *Clark*, 738 N.W.2d at 346. Following appellant's conviction in 2002 he served an executed sentence and a supervised release period of approximately eight years. Given appellant's incarceration, the bad acts are, therefore, not remote.

Next, appellant argues that the district court's ruling was erroneous because the 2002 incident and the current offense were not "markedly similar." In our prior opinion, we determined that the current offense and the prior offense were substantially similar. On remand, the supreme court directed us to consider this issue under the "markedly similar" standard. In *Ness* the supreme court clarified that under the common scheme or plan exception, a prior bad act "must have a marked similarity in modus operandi to the charged offense." 707 N.W.2d at 688. The supreme court did not specifically identify what "markedly similar" means, but referenced a prior case in which the court characterized prior bad acts as "markedly similar." We have considered this decision along with other relevant cases and conclude that the 2002 incident is "markedly similar" to the current offense.

8

By way of example, in *State v. Norris*, the supreme court held that there was a marked similarity between the prior crime and the charged offense where both offenses involved the perpetrator wearing a disguise, carrying a loaded revolver, and threatening the victims. 428 N.W.2d 61, 70 (Minn. 1988). Here, the district court plainly articulated why the *Spreigl* conduct was "remarkably similar" to the charged offense; in both instances appellant opportunistically preyed on physically mature young girls as they slept in their bedrooms at night. We find that the two offenses share a marked similarity. Both the *Spreigl* crime and the charged crime were perpetrated against physically developed young girls sleeping in their bedrooms at night. In both instances, appellant entered the girls' bedrooms while the rest of the household was asleep and attempted to conceal or "camouflage" himself in the shadows to avoid detection. The district court did not abuse its discretion in finding that the *Spreigl* evidence was relevant and material to the charged offenses because both offenses are markedly similar.

Appellant concedes that the facts underlying the 2002 offense share some similarities with the present case but argues that the 2002 offense is not similar enough because it did not involve sexual penetration. We acknowledge that crimes that are of the "same generic type" are not markedly similar. *Clark*, 738 N.W.2d at 346-47 (finding prior crime was not markedly similar to charged offense where the crimes were "relatively remote in time" and the two incidents did not show a "distinctive modus operandi"). However, "absolute similarity" between the charged offense and the *Spreigl* crime is not required. *State v. Berry*, 484 N.W.2d 14, 17 (Minn. 1992); *see also State v. Kennedy*, 585 N.W.2d 385, 391 (Minn. 1998) (holding that *Spreigl* evidence "need not be

9

identical"); *Ness*, 707 N.W.2d at 688 (citing *Kennedy*, 585 N.W.2d at 391). We are satisfied that the district court did not abuse its broad discretion in concluding that the incidents were "remarkably similar," and that under *Ness* these incidents satisfy the "markedly similar" standard.

We previously determined that the probative value of the *Spreigl* evidence outweighed its prejudicial effect because the district court gave the jurors cautionary instructions regarding the proper use of the evidence before the evidence was presented and again before the case was submitted to the jury. *See Kennedy*, 585 N.W.2d at 392 (determining that cautionary instructions "lessened the probability of undue weight being given by the jury to the evidence."). Appellant did not challenge this conclusion in the petition for review, and we do not reconsider it.

But even if the district court abused its discretion by admitting the *Spreigl* evidence, appellant is not entitled to a new trial because he has not been prejudiced. *See Clark*, 738 N.W.2d at 347-48 (finding new trial is not warranted where appellant failed to establish that he was prejudiced by admission of *Spreigl* evidence). The victim's consistent report of the assault and the DNA evidence corroborating her account of penetration are compelling evidence supporting the guilty verdict.

**II.**

Appellant argues that he was improperly convicted of two counts of first-degree criminal sexual conduct based on the same criminal act against the same complainant. *See* Minn. Stat. § 609.04 (2010) ("Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both."); *Spann*, 740

N.W.2d at 573 (prohibiting conviction of multiple offenses arising from the "same behavioral incident"). We affirmed the district court, concluding that appellant was formally adjudicated on only one of the jury's convictions based on the district court's oral pronouncement during sentencing. The supreme court remanded for this court to determine whether it erred in failing to vacate one of appellant's two convictions for first-degree criminal sexual conduct.

When a defendant is convicted on more than one charge for the same act, the "proper procedure" for the sentencing court is to "adjudicate formally and impose sentence on one count only." *State v. French*, 400 N.W.2d 111, 114 (Minn. App. 1987) (quotation omitted), *review denied* (Minn. Mar. 25, 1987); *see also Spann*, 740 N.W.2d at 573. The *Spann* court instructs that "[a] conviction is defined as either a plea of guilty or a verdict or finding of guilty that is accepted and recorded by the court." 740 N.W.2d at 573 (citing Minn. Stat. § 609.02, subd. 5 (2006)). "A guilty verdict alone is not a conviction." *Id*.

In this case, the jury found appellant guilty on both counts. An appellate court looks to the "official judgment of conviction in the district court file as conclusive evidence of whether an offense has been formally adjudicated." *Id*. During sentencing, the district court formally adjudicated appellant on count one, criminal sexual conduct in the first degree, and sentenced him on that count alone. The district court merged the second count for sentencing purposes and an additional sentence was not imposed. However, the order and warrant of commitment incorrectly stated that appellant was sentenced on the first count but "convicted" on both counts one and two. The state

11

concedes that this is incorrect. Assuming that the order and warrant of commitment serves as the judgment of conviction, then it is incorrect in that it fails to accurately reflect the district court's adjudication on one count only. Appellant's conviction for count two is vacated and the matter is remanded to the district court for the limited purpose of correcting the order and warrant of commitment. *See, e.g.*, *State v. Grampre*, 766 N.W.2d 347, 354 (Minn. App. 2009) (vacating one of two convictions based on same criminal act), *review denied* (Minn. Aug. 26, 2009).

**Affirmed in part, reversed in part, and remanded.**