*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1459**

State of Minnesota,
Respondent,

vs.

Lacy Rose Carlsen,
Appellant.

**Filed July 5, 2016
Reversed and remanded
Larkin, Judge**

Freeborn County District Court
File No. 24-CR-12-2050

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, Lauren F. Schoeberl (certified student attorney), St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Connolly, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant challenges her conviction of fifth-degree controlled-substance crime, arguing that the district court abused its discretion by allowing the state to elicit testimony

regarding her prior drug use. We agree. And because there is a reasonable possibility that the testimony significantly affected the verdict, we reverse and remand for a new trial.

**FACTS**

In November 2012, a concerned citizen reported that she had seen 14 baggies of methamphetamine in a house in which appellant Lacy Rose Carlsen lived with her boyfriend, B.E., along with another person and that person's young son. The citizen alleged that the methamphetamine was on B.E.'s dresser, which was in a bedroom that B.E. shared with Carlsen. The police obtained a warrant and searched the house. Officers found 0.01 grams of methamphetamine folded up in a yellow Post-it Note inside of Carlsen's purse, which was sitting on the bed in the bedroom that she shared with B.E. Officers did not find any other methamphetamine in the house. Respondent State of Minnesota charged Carlsen with fifth-degree controlled-substance crime, and the case was tried to a jury.

At trial, Carlsen testified that she was "positive" there were not any illegal drugs in her purse. She also testified that her purse did not contain a yellow Post-it Note. Carlsen testified that Freeborn County Sheriff Deputy Arnold Zuniga visited her in jail the day after her arrest. After Deputy Zuniga told her that she was going to be charged with a felony because there was a "small rock" of methamphetamine in her purse, Carlsen called him a "f-cking liar." Carlsen testified that a day or two later, Deputy Zuniga again visited her in jail and told her that she was going to be charged for possessing three grams of methamphetamine. Carlsen again called him a "f-cking liar."

Before cross-examining Carlsen, the prosecutor asked the district court to allow questioning regarding Carlsen's prior drug use, arguing:

2

In the direct examination, [Carlsen] said that there were no illegal drugs in her purse, and I intend to ask her whether she used, or was an illegal drug user, and I believe that is an appropriate question.

. . . .

I intend to ask her in cross-examination whether she is or was a meth user. And one of the concerns here is that she has tested positive, even while this case has been pending, and that that is—that that would be appropriate rebuttal, or information, to discredit any claim by her that she was not a meth user at the time that this occurred.

Carlsen objected, arguing that it was "an improper question," prejudicial, and irrelevant. The district court ruled as follows: "I'm going to allow the questions. Certainly, possession of drugs is evidenced by the fact that someone used it. So I will allow you to inquire, as you suggested."

The prosecutor questioned Carlsen as follows:

Q: You've testified that the meth that was found in this case was not your meth in that purse; isn't that right?
A: Yes.
Q: But you don't deny that you were a meth user, do you?
A: I was not then, a meth user, no.
Q: Before then, you were?
A: Before; not during. Not during any of that time. I was sober.
Q: You were sober at that time?
A: Yes.
Q: And you acknowledge that you did, at one point, use methamphetamine?
A: Yes, I have, before that.
Q: So at one—at one point, you knew how to get methamphetamine, right?
A: Yes, you are correct.
Q: And at—at various times you would have had to keep— or you would have kept methamphetamine in your purse?
A: No.

3

During cross-examination, Carlsen testified that B.E. had a "hot temper" and that he had kicked her out of the house two nights before the police executed the search warrant. Carlsen said she left without clothes or her purse and that she stayed with a friend. She testified that she was gone the entire day before the search and returned to the house approximately six hours before the search.

In closing arguments, the prosecutor said:

> Meth is a highly addictive drug, as Deputy Zuniga testified to. And the Defendant admitted that she had used the drug. It's not surprising that it would be in her purse or that she would maintain even a small rock of meth in a Post-it Note in her purse, because even a small rock of meth can be used for a person to get high. It can be—she could, obviously, use it.

Carlsen's attorney argued that Carlsen did not know where the methamphetamine came from, but Carlsen knew that she did not put it in her purse and that she did not know it was in her purse. Carlsen's attorney suggested Deputy Zuniga and B.E. had an opportunity to place the methamphetamine in Carlsen's purse.

Before the jury returned its verdict, the district court made the following record:

> The jury went out for deliberations at just a couple minutes before three. At . . . 3:40 the bailiff stopped in my chambers and said the jury is split and they want to know what to do. And I told the bailiff, "Tell them to keep on deliberating." And I also told the bailiff, "If they have any other questions, they need to write it down so we can go in session and address it."

The jury found Carlsen guilty. The district court stayed imposition of sentence and placed Carlsen on probation. This appeal follows.

## D E C I S I O N

Carlsen argues that the district court erred by allowing evidence regarding her prior drug use. The admission of evidence of other crimes or bad acts, so-called *Spreigl* evidence, is reviewed for an abuse of discretion. *State v. Clark*, 738 N.W.2d 316, 345 (Minn. 2007). When such evidence is erroneously admitted, this court must determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. *State v. Fardan*, 773 N.W.2d 303, 320 (Minn. 2009). If such a possibility exists, then the error is prejudicial and a new trial is required. *Id.*

*Spreigl* evidence is inadmissible to prove that a defendant acted in conformity with her character. Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). "The overarching concern behind excluding such evidence is that it might be used for an improper purpose, such as suggesting that the defendant has a propensity to commit the crime or that the defendant is a proper candidate for punishment for his or her past acts." *Fardan*, 773 N.W.2d at 315 (quotations omitted). But the evidence may be admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Minn. R. Evid. 404(b).

There are five requirements for admission of other-acts evidence:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*State v. Ness*, 707 N.W.2d 676, 685-86 (Minn. 2006).

5

"When it is unclear whether *Spreigl* evidence is admissible, the benefit of the doubt should be given to the defendant and the evidence should be excluded." *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998). If the evidence is allowed, "[a]s a general rule, even absent a request by the defense, [limiting instructions] should be given prior to the admission of [the] 404(b) evidence and again at the end of trial to help ensure that the jury does not use the evidence for an improper purpose." *State v. Bauer*, 598 N.W.2d 352, 365 (Minn. 1999).

In this case, the district court allowed testimony regarding Carlsen's prior methamphetamine use on the impermissible ground that it showed that she had a propensity to possess methamphetamine, reasoning that "possession of drugs is evidenced by the fact that someone used it." *See Fardan*, 773 N.W.2d at 315 (stating that an improper purpose includes "suggesting that the defendant has a propensity to commit the crime"). Moreover, the district court did not provide limiting instructions. Nonetheless, the state contends that the district court did not abuse its discretion because Carlsen opened the door to evidence regarding her past methamphetamine use.

> Opening the door occurs when one party by introducing certain material creates in the opponent a right to respond with material that would otherwise have been inadmissible. The doctrine is essentially one of fairness and common sense, based on the proposition that one party should not have an unfair advantage and that the factfinder should not be presented with a misleading or distorted representation of reality.

*State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (citations and quotations omitted).

The state argues that it did not anticipate having to introduce evidence regarding Carlsen's past methamphetamine use until Carlsen opened the door to that evidence by

telling the jury during her opening statement that the police "burst" through her door even though she had never been convicted of a felony and that it was such a small amount of methamphetamine that the police did not bother testing the Post-it Note for fingerprints, eliciting police testimony that the drugs in her purse had a street value of one dollar, and testifying that she was "[p]ositive" there were no drugs in her purse when the police entered the residence. The state contends that "[t]he prosecutor was entitled to present evidence to counter [Carlsen's] claim that she would have no reason to possess 'that tiny bit of meth' with a street value of about one dollar."

But Carlsen did not assert that she had no reason to possess such a small amount of methamphetamine. During opening remarks, Carlsen's attorney told the jury that it was such a small amount of methamphetamine that the police did not bother to test the Post-it Note for fingerprints. This remark does not imply that Carlsen lacked motive to possess the methamphetamine. Instead, it implies that the police did not gather enough evidence to prove possession. Moreover, during direct examination, Carlsen did not testify that she had never used methamphetamine, and she did not explicitly claim that someone planted it. Instead, she essentially denied the allegations against her, testifying that she was "[p]ositive" there were not any illegal drugs in her purse. In sum, Carlsen did not obtain an unfair advantage by presenting the jury with a misleading or distorted representation of reality and therefore did not open the door to evidence regarding her prior drug use. *Cf. State v. Yang*, 644 N.W.2d 808, 817 (Minn. 2002) (concluding that the defendant's testimony regarding his fear of a gang created the impression that he was afraid of gangs,

which "paint[ed] a picture" that was "incomplete" and opened the door to evidence regarding the defendant's own gang affiliation).

Because Carlsen pleaded not guilty to the possession charge and demanded a jury trial, the state should have anticipated that if she testified at trial, she likely would deny possession. If the state wanted to introduce evidence of Carlsen's prior methamphetamine use at trial, it should have provided timely *Spreigl* notice so the district court could have conducted a more thorough *Spreigl* analysis and recognized the need for limiting instructions if the evidence was admitted.

Under the circumstances here, the district court should not have allowed the state to cross-examine Carlsen about her prior methamphetamine use. But that conclusion does not end our analysis. We must also determine whether the error requires a new trial. *See Fardan*, 773 N.W.2d at 320 (assessing whether erroneously admitted *Spreigl* evidence warranted a new trial). Carlsen is not entitled to a new trial unless there is "a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Id.* (quotation omitted). The supreme court has considered three factors when determining if erroneously admitted *Spreigl* evidence significantly affected a verdict: (1) whether other evidence was presented on the issue for which *Spreigl* evidence was offered, (2) whether the court gave a limiting instruction, and (3) whether the state dwelled on the evidence in its closing argument. *Id.* "The defendant bears the burden of demonstrating that [she] was prejudiced by the admission of the evidence." *Id.* (quotation omitted).

In this case, the district court identified the issue of "possession" as the reason for allowing evidence of Carlsen's prior methamphetamine use, reasoning that prior use proves

8

current possession. Carlsen's conviction is based on constructive possession. The state can prove constructive possession by showing: (1) "the police found the substance in a place under [the] defendant's exclusive control to which other people did not normally have access," or (2) "if police found [the substance] in a place to which others had access, there is a strong probability (inferable from other evidence) that [the] defendant was at the time consciously exercising dominion and control over it." *State v. Florine*, 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975). The state presented other evidence of constructive possession: the methamphetamine was found in Carlsen's purse and her purse was in her bedroom. But the district court did not give a limiting instruction. Moreover, the state dwelled on the evidence in its closing argument, using Carlsen's prior drug use to frame its theory of the case. The prosecutor argued, "Meth is a highly addictive drug, as Deputy Zuniga testified to. And the Defendant admitted that she had used the drug. It's not surprising that it would be in her purse . . . ."

In sum, even though the state presented other circumstantial evidence of possession, given the state's emphasis on the *Spreigl* evidence in its closing argument and the absence of limiting instructions, there is a reasonable possibility that the evidence regarding Carlsen's prior methamphetamine use significantly affected the verdict. We therefore reverse and remand for a new trial without addressing Carlsen's argument that the district court erred by having an ex parte communication with the reportedly deadlocked jury.

**Reversed and remanded.**

9