*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1650**

State of Minnesota,
Respondent,

vs.

Alfredo Concepcion,
Appellant.

**Filed October 31, 2016
Affirmed
Connolly, Judge**

Ramsey County District Court
File No. 62-CR-14-9635

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Renée Bergeron, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Worke, Judge; and Ross, Judge.

**CONNOLLY**, Judge

Appellant challenges his conviction of criminal sexual conduct, arguing that the district court abused its discretion by not removing two jurors, by admitting *Spreigl* evidence of a 2006 crime, and by excluding evidence that men who shared a house with appellant and the victim were convicted sex offenders.  Because we see no abuse of discretion in the decisions of the district court under applicable law, we affirm.

## FACTS

In 2006, appellant Alfredo Concepcion sexually abused C.C., a woman with whom he was in a relationship.  He was convicted of a felony and completed sex-offender treatment.

In 2014, appellant married and sexually abused L.H. in a manner similar to that in which he had abused C.C.  He was charged with third-degree criminal sexual conduct and felony domestic assault.

At appellant's jury trial, C.C. testified about appellant's 2006 sexual abuse of her. The jury found appellant guilty as charged and also found five aggravating sentencing factors.  Appellant was sentenced to 180 months in prison.

He challenges his conviction, arguing that two of the jurors were biased and should not have been seated, the *Spreigl* evidence of his 2006 crime should not have been admitted, and evidence that the men with whom appellant and L.H. shared a house were sex offenders should not have been excluded.

# D E C I S I O N

## 1. The Jurors

As a threshold matter, appellant did not use his peremptory challenges to oppose the seating of jurors P. and V.S., whom he now claims were biased. He did request to strike 13 jurors, including P. and V.S., "for cause"; the district court struck the other 11, but not P. and V.S.

> We review the district court's denial of a challenge for cause for an abuse of discretion. Our review of the district court's determination of juror impartiality is especially deferential. That determination depends largely on the prospective juror's demeanor, and demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying. *In contrast to appellate review of a cold transcript, the district court stands in the best position to hear the juror's testimony, observe her demeanor, and evaluate her ability to be impartial.*
>
> . . . .
>
> . . . [A] party may seek to have a prospective juror removed if the juror's state of mind—in reference to the case or to either party—satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the challenging party. Put differently, the challenging party has the burden of proving that the juror expressed a state of mind demonstrating actual bias towards the case or either party.
>
> To establish that the prospective juror expressed actual bias, the challenging party must identify more than the mere existence of any preconceived notion as to the guilt or innocence of an accused. Rather, the challenging party must show that the juror exhibited strong and deep impressions that would prevent [the juror] from laying aside [his or] her impression or opinion and rendering a verdict based on the evidence presented in court.
>
> . . . .
>
> . . . In determining whether a prospective juror expressed actual bias, other courts have examined the juror's challenged answer within the context of the entire voir dire

> testimony to understand what the juror meant by the answer. We agree that a juror's answer must be viewed in context to determine whether it demonstrated actual bias.

*State v. Munt*, 831 N.W.2d 569, 576-78 (Minn. 2013) (concluding that a juror had not expressed actual bias) (emphasis added) (quotations and citations omitted).

But a prospective juror who has expressed actual bias may be rehabilitated and then seated on the jury. "We consider a juror to be rehabilitated if he or she states unequivocally that he or she will follow the district court's instructions and will set aside any preconceived notions and fairly evaluate the evidence." *State v. Fraga*, 864 N.W.2d 615, 623 (Minn. 2015) (citations and quotation omitted).

**Juror P**.

Prior to jury selection, prospective jurors were given a questionnaire that asked, among other things, if they thought someone previously convicted of a sex offense would be more likely than other people to commit another sex offense. On this questionnaire, P. wrote "once a predator, always a predator." Appellant argues that P. expressed actual bias and was not properly rehabilitated.

But P.'s questioning by the district court demonstrates both that P. did not have actual bias towards appellant as someone with a prior sex-offense conviction and that P. would follow the district court's instructions to "set aside any preconceived notions and fairly evaluate the evidence." *Id.*

In reference to his comment on the questionnaire, the district court asked P., "[A]re you going to be able to set aside that feeling [of ']once a predator, always a predator['] and listen to the facts and decide the case just on what you hear or is that going to be always

4

on your mind?" P. answered, "I can follow instructions. It will be okay." Appellant's counsel then questioned P. about the disparity between P.'s questionnaire statement and his confidence that he could set aside his feelings. P. explained that the questionnaire had asked for his opinion, which he gave, but the district court's question asked for his response to an instruction, and he thought he could follow the instruction.

Appellant's counsel also repeatedly questioned P. as to whether the fact that his girlfriend had been sexually assaulted about a year ago would affect his decision.[1]

| | |
|---|---|
| Counsel: | Can you sit here and say that you hundred percent would be able to set any similar allegations [aside]? |
| P. | Like I said . . . before, I really feel as if . . . I could be fair. |
| Counsel: | . . . [G]iven the fact that you fairly recently went through this with somebody really close to you can you really say for one hundred percent certain that you could set that experience aside and those feelings and emotions aside? |
| P. | I believe I can. |
| Counsel: | Hold them at bay and can set them aside? |
| P. | I believe I can. |

---

[1] Appellant also says that P. should be deemed to have an implied bias because P. did not mention his girlfriend's assault on the questionnaire, which shows that P. would be unable to set this event aside when acting as a juror, and argues that this is an "extreme" situation to which the implied-bias doctrine should be applied. *See* Minn. R. Crim. P. 26.02, subd. 5 (1) (providing 11 grounds for which a juror may be challenged for cause). Appellant acknowledges that the Minnesota Supreme Court has repeatedly declined to apply the implied-bias doctrine because it has not found an extreme situation warranting its application. *See, e.g.*, *Fraga*, 864 N.W.2d at 622-23 (declining to extend the doctrine to situation in which the juror knew of the defendant's prior conviction). P.'s repeated assertions that he would be able to set the incident aside defeat appellant's argument and do not provide a basis for this court to extend the application of the implied-bias doctrine.

5

The state's counsel also asked P. if he understood that the facts in his girlfriend's case were probably entirely different from the facts in this case, to which P. answered, "Absolutely, I understand that," and P. answered, "Yes," when asked if he was "going to be able to judge the case just on the facts here without being influenced by what happened [with] his girlfriend."

Appellant does not "show that the juror [P.] exhibited strong and deep impressions that would prevent [him] from laying aside [his] impression or opinion and rendering a verdict based on the evidence presented in court," *see Munt*, 831 N.W.2d at 577, or that P. did not "state[] unequivocally that he . . . will follow the district court's instructions and will set aside any preconceived notions and fairly evaluate the evidence." *See Fraga*, 864 N.W.2d at 623.

**Juror V.S.**

Appellant argues that juror V.S. expressed actual bias and was not rehabilitated. *See id.*; *Munt*, 831 N.W.2d at 576-78. But, after V.S. explained that he had been a witness in a sex-abuse case brought against a teacher in his high school about 24 years ago, the district court asked him, "[I]s there anything about that case that brings up signals or whistles or whatever that . . . [y]ou can't be fair in this case?" V.S. interrupted the question with "Not really" and replied "No" when the question was finished. The district court then asked him for his view on whether someone who had been previously convicted of a sex offense was likely to commit the same offense again. When asked if he could set aside his knowledge of a first offense and "listen to the facts of this case," V.S. said he would "find it difficult." The district court then asked, "[I]f I were to give you some jury instructions on how to deal

6

with the previous [offense,] how to handle it in relation to the new case[,] would you be able to follow my new jury instructions?" V.S. answered, "Yes."

When appellant's counsel questioned V.S., V.S. said he would do his "absolute best" to be fair and impartial but could not say "one hundred percent I can be fair and impartial here." The state's counsel then told V.S. that some people "[who had been] revictimized or something" were "just not appropriate to sit on a jury like this" but other people "are going to do everything they can to put it [i.e., what happened to them] aside [and] listen to the judge and evaluate the evidence" and asked V.S. which group he was in. V.S. said, "I think if the judge instructs me that's what I'm willing to follow" and agreed that he was "a rule follower kind of guy." If V.S. did demonstrate actual bias, he, like P., indicated that he had been rehabilitated and would follow the district court's instructions. We conclude that, under our appropriate standard of review, the district court did not abuse its discretion in declining to strike P. and V.S. for cause.

**2.    *Spreigl* Evidence**

The admission of *Spreigl e*vidence is reviewed for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006). C.C. testified about appellant's sexual abuse of her in 2006.

Both C.C. and L.H. testified that appellant watched pornography, became sexually aggressive, and then raped them anally. The prosecutor said that C.C.'s evidence "[was] not being offered for propensity or to say [']he did it then so he must have done it now[']" but rather to show that appellant "*has a thing* with watching pornography, being sexually aggressive, and then raping the women that he's with especially anally because that's what

7

he does." (Emphasis added). Appellant claims that "has a thing" means "has a character trait" and argues that C.C.'s evidence was offered for the purpose of showing that appellant has a propensity to commit violent rape, not to establish modus operandi. But the testimony concerned appellant's acts, not his character: he committed the same sequence of acts with each woman, and that sequence was his modus operandi.

Appellant also argues that C.C.'s evidence "had little or no probative value as it did not establish a common scheme or plan." "[E]vidence of other crimes . . . may be admitted only for limited, specific purposes. Those purposes include showing . . . a common scheme or plan." *Id.* at 685.

> The use of *Spreigl* evidence to show a common scheme or plan has been endorsed repeatedly, despite the particular risk it poses for unfair prejudice. . . . The exception evolved . . . to embrace evidence of offenses which, because of their marked similarity in modus operandi to the charged offense, tend to corroborate evidence of the latter. . . .
> . . . [T]he closer the relationship between the other acts and the charged offense, in terms of time, place, or modus operandi, the greater the relevance and probative value of the other-acts evidence and the lesser the likelihood that the evidence will be used for an improper purpose. . . . [T]he common scheme or plan exception includes evidence only of offenses that have a marked similarity in modus operandi to the charged offense.

*Id.* at 687-88. Appellant argues that his offense with C.C. was not close in time or place, having been committed in 2006 in St. Francis, as opposed to in 2014 in St. Paul. But the offense must have a close relationship "in terms of time, place, *or* modus operandi" and it is "marked similarity *in modus operandi* to the charged offense" that is corroborative. *Id.* (emphasis added).

8

The jury heard from both L.H. and C.C. that: (1) appellant had been living with them before the abuse occurred; (2) the abuse occurred after appellant had been watching pornography; (3) appellant forcibly anally penetrated them, then orally penetrated them; (4) appellant closed off their airways so they could not breathe during the oral penetration; and (5) they vomited as a result of the oral penetration. Appellant argues that the offenses were not similar because C.C. said he handcuffed her while L.H. did not allege the use of handcuffs or restraints and appellant was on drugs when he abused C.C. but not when he abused L.H. But it is not necessary that the acts, or the circumstances surrounding them, be identical or entirely similar. *State v. Kennedy*, 585 N.W.2d 385, 391 (Minn. 1998).

Appellant also argues that there were differences between C.C. and L.H.: L.H. was his wife but C.C. was not, and L.H. had a motive to be identified as a victim of violence against women—i.e., acquiring legal status for herself and her children—while C.C. did not. But it is similarity of the defendant's acts, not similarity of the victims, that is relevant to the admissibility of the evidence. Evidence of appellant's sexual abuse of C.C. was admissible as probative of a common scheme or plan of appellant's abuse of women with whom he has a domestic relationship.

Moreover, as the law requires, the jury was instructed as to the purpose of C.C.'s evidence both when the evidence was admitted and at the conclusion of the trial.

> As I told you at the time this evidence was offered it was admitted for the limited purpose of assisting you in determining whether [appellant] committed those acts with which [he] is charged in the complaint. *This evidence is not to be used as proof of the character of [appellant] or that [appellant] acted in conformity with such character.*

> [Appellant] is not being tried for and may not be convicted of any offense other than charged offenses. You are not to convict [appellant] on the basis of any occurrence on April 1, 2006, in St. Francis, Minnesota. To do so might result in unjust double punishment.
>
> The evidence concerning a prior conviction of [appellant] is admitted only for your consideration in deciding whether [he] is telling the truth in this case. You must not consider this conviction as evidence of [appellant's] character or conduct except as you may think it reflects on believability.

(Emphasis added.) Jurors are presumed to follow the district court's instructions. *State v. Miller*, 573 N.W.2d 661, 675 (Minn. 1998). The explicit instructions as to how the jurors could use C.C.'s testimony defeat appellant's final argument that the prejudicial effect of the incident with C.C. outweighed its probative value. *See Ness*, 707 N.W.2d at 686 (listing this factor among those the district court must consider prior to admitting *Spreigl* evidence). Appellant argues that, because his prior offense was criminal sexual assault, it should not have been admitted because criminal sexual assault "is 'hugely' prejudicial with a jury—more prejudicial than evidence of other prior criminal offenses." But he offers no support for the implication that criminal sexual assault is ipso facto inadmissible as *Spreigl* evidence.

The district court did not abuse its discretion in admitting evidence of appellant's prior sexual-assault conviction.

**3.      Exclusion of Evidence**

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden

10

of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).

The district court granted the state's motion to exclude evidence that the men who lived in the house with appellant and L.H. and who were witnesses at appellant's trial were sex offenders. Appellant argues that this was an abuse of discretion because it deprived him of his right to present a complete defense: the evidence, if admitted would have impeached L.H.'s statement that she did not know appellant had a prior sexual conviction, shown that one of the witnesses against appellant was trying to have his own relationship with L.H., and demonstrated that appellant locked L.H. in their bedroom to protect her, not to isolate her, from the other men in the house. But evidence that the witnesses were sexual offenders would not have shown that L.H. knew they were sexual offenders, and the witness appellant claimed sought a sexual relationship with L.H. testified that he did not have sexual feelings for L.H. Finally, the state agreed the evidence showed that L.H. was not locked into her bedroom, although others were locked out while she was in it, so evidence explaining why appellant locked her in was not relevant. The district court did not abuse its discretion by excluding evidence that the other male residents of the house where appellant and L.H. lived were sexual offenders.

**Affirmed.**

11